916 F.2d 1067
 17 Fed.R.Serv.3d 1179, RICO Bus.Disp.Guide 7611,
31 Fed. R. Evid. Serv. 780
 BANK ONE OF CLEVELAND, N.A., and Bank One of Akron, N.A.,
Plaintiffs-Appellees,
v.
Lowell L. ABBE; Atwater Enterprises, Inc.; Portage Angus
Farms, Inc.; Norman M. Abbe; Maria F. Abbe; Carolyn J.
Strouse; Portage Angus Farms Trust; Boot & Saddlery, Inc.;
Black Bull Inn, Inc.; Western Reserve Saddlery, Inc.;
W.R.S., Inc.; Amerind International, Inc.; Triad
Investment Corporation; and Revere Pinnacle Group, Inc.,
Defendants-Appellants.
 No. 89-3559.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 5, 1990.
Decided Oct. 17, 1990.
 
 Douglas L. Talley, George W. Rooney (argued), Jonathan D. Fishbane, Roetzel & Andress, Akron, Ohio, for plaintiffs-appellees.
 Kenneth L. Gibson (argued), Warren W. Gibson, Weick, Gibson & Lowry, Cuyahoga Falls, Ohio, for defendant-appellant Revere Pinnacle Group, Inc.
 Before JONES and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 In this civil action brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1961, et seq., the district court entered default judgments against all of the defendants as sanctions, under Fed.R.Civ.P. 37(b)(2)(C), for noncompliance with the court's discovery orders. All defendants appeal. Two of the individual defendants claim the lower court erred in entering the default judgment sanction against them since their refusal to answer discovery deposition questions was grounded in the fifth amendment privilege against self-incrimination. The remaining defendants claim it was error for the court to enter judgment against them for a variety of mitigating reasons. All of the defendants raise a host of additional issues.
 
 
 2
 We conclude that the district court erred in entering default judgment against the two individual defendants who invoked the fifth amendment privilege against self-incrimination. However, we also conclude that the default judgment sanction was not an abuse of discretion as to the other defendants. We resolve the additional issues as discussed below.
 
 I.
 
 3
 On August 12, 1985, Bank One of Cleveland, N.A. and Bank One of Akron, N.A. ("the banks") sued numerous individuals and corporations for civil damages under RICO and common law claims of fraud in the United States District Court. The elements of a civil RICO action parallel those in a RICO criminal prosecution, and, if proven, entitle a claimant to treble damages. See 18 U.S.C. Sec. 1964(c).[1] As part of their RICO claim, the banks alleged that defendants obtained loans from the banks through a variety of illegal means, including 1) mail fraud, in violation of 18 U.S.C. Sec. 1341; 2) wire fraud, in violation of 18 U.S.C. Sec. 1343; 3) transportation of fraudulently obtained property between states, in violation of 18 U.S.C. Sec. 2314; and 4) bankruptcy fraud, in violation of Title 11 of the United States Code.
 
 
 4
 In May 1986, two of the individual defendants, Lowell Abbe ("Abbe") and Carolyn Strouse ("Strouse"), were indicted on twenty-eight counts of bank fraud related to many of the activities the banks alleged in their civil RICO complaint. Counts one to twenty-five of the indictment charged that Abbe and Strouse had filed fraudulent loan applications violating 18 U.S.C. Sec. 1014. Count twenty-six alleged that they fraudulently concealed mortgaged property in violation of 18 U.S.C. Sec. 658. Counts twenty-seven and twenty-eight accused them of concealing assets during bankruptcy proceedings, in violation of 18 U.S.C. Sec. 152.
 
 
 5
 After permitting the banks to amend their complaint, the district court, on October 15, 1986, stayed proceedings in the civil suit as to Abbe and Strouse "until further order of this court" because of the pendency of the criminal charges. The banks attempted, with little success, to engage in discovery without the involvement of Abbe and Strouse.
 
 
 6
 Almost two and one-half years later, on February 21, 1989, the district court lifted its stay of the proceedings as to Abbe and Strouse after learning that they had entered pleas of nolo contendere in the criminal proceedings before another district judge and had been granted a continuance of their sentencing for one year. On March 17, 1989, the banks filed notices scheduling the depositions of Abbe and Strouse within the month. Abbe failed to appear at his April 20, 1989, deposition, and although Strouse appeared at her April 21, 1989, deposition, she refused to answer any questions until she spoke with the attorney representing her in the criminal proceedings.
 
 
 7
 Strouse then decided that she wanted to engage in some discovery of her own. She filed a motion asking that she be permitted to record the depositions she intended to take on audiotape rather than have them taken down by a reporter and later transcribed. At an April 26, 1989, hearing on this issue, the court promised to consider Strouse's request, but said such an accommodation was not yet required since Strouse would not be permitted to depose anyone as long as she exercised "her continuing refusal to be deposed." The court rejected Strouse's allegation that she was being punished for exercising her fifth amendment rights, and the court suggested the possibility of sanctions if Strouse's noncooperation continued.
 
 
 8
 On the same day, April 26, 1989, the banks filed a motion for default judgment against Abbe under Fed.R.Civ.P. 37 for his failure to appear at any of the deposition hearings they had rescheduled for him for April 24, 25, 26, or 28, 1989. The district court declined to address the motion at that time in order to give Abbe further opportunity to comply with discovery. The banks again scheduled depositions for Abbe and Strouse, this time for May 8 and 9, 1989, respectively.
 
 
 9
 On May 8, 1989, Abbe and Strouse filed a joint motion for a protective order. They requested that the court restrict discovery concerning the criminal matters to which they had previously pleaded nolo contendere, since they had not yet been sentenced and "discovery ... could bring about additional federal charges or state prosecution involving the same transactions." The district court did not immediately rule on this motion, and Abbe and Strouse appeared as requested at their respective depositions.
 
 
 10
 Abbe prefaced his May 8, 1989, deposition with the statement that he would answer only those questions that had nothing to do with his past and potential criminal prosecutions. He then invoked the fifth amendment in response to questions about the location of documents, the whereabouts of other defendants, and his alleged transactions with the banks. Strouse likewise began her May 9, 1989, deposition with the statement that she would not answer questions relating to her past or potential criminal prosecution. She declined to answer most of the questions asked regarding the other defendants.[2]
 
 
 11
 On May 15, 1989, the banks filed another motion for default judgment, this time against both Abbe and Strouse. The next day, despite its knowledge that Strouse had not had an opportunity to respond to the banks' motion, the district court ordered Abbe and Strouse to be deposed again, to answer fully questions to be put to them, and to release documents the banks had been requesting. The court required all these things be accomplished by noon on May 19, 1989, under penalty of entry of a default judgment.
 
 
 12
 Abbe and Strouse were not deposed, and they released no documents by noon of May 19, 1989. That afternoon, relying upon Fed.R.Civ.P. 37, the district court entered a default judgment against them and against other defendants it deemed to have failed to comply with discovery.[3] Bank One of Cleveland, N.A. was awarded judgment against Abbe, Strouse, Norman M. Abbe, Maria F. Abbe, Atwater Enterprises, Inc., Black Bull Inn, Inc., Portage Angus Farms Trust, Portage Angus Farms, Inc., Amerind International, Inc. ("Amerind"), and Triad Investment Corporation ("Triad"), jointly and severally, for $1,896,723.15 plus per diem interest at a rate of $414.27 beginning on January 31, 1989. Bank One of Akron, N.A. was given judgment against Abbe, Strouse, Portage Angus Farms, Inc., Atwater Enterprises, Inc., Boot & Saddlery, Inc., W.R.S., Inc., Western Reserve Saddlery, Inc., and Triad, jointly and severally, for $513,367.11 plus interest at $100.47 per day from and after January 31, 1989.
 
 
 13
 The district court cited defendants' "flagrant and repeated failures to cooperate with discovery in this action over an extended period of time" as the basis for its entering the judgment. It relied on its May 16, 1989, order to chronicle the discovery violations of Abbe and Strouse, referred to the failure of the other defendants to do anything to "remove the grounds for default" the banks had asserted in a February 9, 1989, motion for default judgment, and noted specifically defendants Norman and Maria Abbe's failure to respond to written discovery requests served on them December 27, 1988.
 
 
 14
 As part of its May 19, 1989, default judgment, the district court granted the banks' motion to add Revere Pinnacle Group, Inc. ("Revere Pinnacle") to the group of defendants against which it entered default judgment. Although it did not enter judgment against Revere Pinnacle by name, the judgment set aside a conveyance of real estate to which Revere Pinnacle was a grantee in the chain of title. The court also entered a marginal order denying Abbe and Strouse's May 8, 1989, motion for the protective order.
 
 
 15
 Abbe and Strouse and the other sanctioned defendants now appeal the default judgment, collectively assigning seven errors:
 
 
 16
 1) Abbe and Strouse assert that the district court erred in entering a default judgment against them for their refusal to answer questions which would have required them to waive their fifth amendment rights;
 
 
 17
 2) The remaining defendants claim the court erred in entering judgment against them, given the mitigating circumstances in their favor;
 
 
 18
 3) All defendants claim the court erred in entering a civil RICO judgment against them when the banks' complaint did not sufficiently state a civil RICO claim;
 
 
 19
 4) All assert that the court erred in setting the amount of the judgment it entered in favor of the banks;
 
 
 20
 5) Revere Pinnacle claims the district court erred in simultaneously adding it as a defendant in the suit and, without notice to it, entering default judgment against it;
 
 
 21
 6) Strouse asserts that the district court erred in conducting prejudgment attachment proceedings regarding certain property without her presence; and
 
 
 22
 7) All defendants assert that the district court erred in not conducting a hearing or making specific findings of fact regarding their motion to disqualify the law firm representing the banks in this litigation.
 
 II.
 
 23
 A district court may sanction parties who fail to comply with discovery orders in a variety of ways, including dismissal of their lawsuit or entry of default judgment against them. See Fed.R.Civ.P. 37(b)(2)(C).[4] "It is well-established ... that district court dismissal orders under this rule are reviewable only for abuse of discretion." Regional Refuse Sys. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988) (citations omitted). Other circuits have recognized that this same standard of review applies to sanction decisions involving an entry of default judgment. See, e.g., Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 955 (4th Cir.1987); United States for use of M-Co. Constr., Inc. v. Shipco Gen., Inc., 814 F.2d 1011, 1013 (5th Cir.1987); M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 872 (10th Cir.1987).
 
 
 24
 Simply put, "if a party has the ability to comply with a discovery order and does not, dismissal," and we add or entry of default, "is not an abuse of discretion." Regional Refuse, 842 F.2d at 154. Just as " '[d]ismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault,' " id. at 153-54 (quoting Patton v. Aerojet Ordinance Co., 765 F.2d 604, 607 (6th Cir.1985)), so, too, is entry of default judgment. Additional factors to consider in reviewing a district court's sanction decision under Fed.R.Civ.P. 37 include "whether the adversary was prejudiced by the dismissed [or defaulting] party's failure to cooperate in discovery, whether the dismissed [or defaulting] party was warned that failure to cooperate could lead to dismissal [or default], and whether less drastic sanctions were imposed or considered before dismissal [or default] was ordered." Id. at 155 (citations omitted).
 
 A.
 
 25
 Abbe and Strouse argue that the district court abused its discretion in entering default judgment against them for their refusal to appear at some of their scheduled depositions and/or for their refusal to answer questions asked them at the depositions they attended due to their concerns about self-incrimination. They claim they were not required to waive their fifth amendment rights in order to satisfy the banks' discovery demands.[5] For the reasons that follow, we agree that the district court erred in rejecting Abbe and Strouse's fifth amendment claims.
 
 1.
 
 26
 The fifth amendment to the United States Constitution provides that "[n]o person shall be ... compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. This privilege against self-incrimination "protects against any disclosures the witness reasonably believes could be used in a criminal prosecution [against him] or could lead to other evidence that might be so used." Kastigar v. United States, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Accord Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); In re Morganroth, 718 F.2d 161, 167 (6th Cir.1983). The privilege may be invoked in the course of any proceeding, criminal or civil. Kastigar, 406 U.S. at 444, 92 S.Ct. at 1656; In re Morganroth, 718 F.2d at 165. Its availability " 'does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites.' " Estelle v. Smith, 451 U.S. 454, 462, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359 (1981) (quoting In re Gault, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967)).
 
 
 27
 At the April 26, 1989, hearing regarding Strouse's request to tape the depositions she wished to take, the district court indicated its belief that Abbe and Strouse were no longer protected by the fifth amendment because they had previously entered their pleas of nolo contendere to the criminal charges against them. The court told Strouse:
 
 
 28
 As far as I'm concerned the stay has been lifted, you have been noticed for depositions and you at this point are required to appear for deposition and respond.
 
 
 29
 I understand the advice that your counsel has given you, but I do not think that that advice is well-founded at this point for the reason that you have entered a plea. You are no longer protected as far as I'm concerned by the stay and your Fifth Amendment rights are no longer relevant to this matter. You have entered a plea in the criminal proceedings.
 
 
 30
 (Emphasis added.) Later, in the same proceeding, the court seemed to acknowledge that Abbe and Strouse may still have had some fifth amendment concerns. It said, "I'm not compelling you to be deposed at this point. I'm telling you, however, that on appropriate motion, I will determine what sanction is appropriate if you continue to refuse to be deposed."
 
 
 31
 But it was at the May 16, 1989, hearing on plaintiffs' motion for default judgment that the court made it clear that Abbe and Strouse could no longer invoke the privilege against self-incrimination as a justification for noncompliance with the court's discovery order. The court stated:
 
 
 32
 Although the Fifth Amendment privilege extends to civil proceedings, it does not extend to permit these defendants to make any further mockery of the judicial process. The Court has attempted to accommodate these defendants, at considerable expense to the plaintiffs, for the over two-year period of the stay, and now believes that the plaintiffs have a right to pursue their lawsuit. Although Mr. Abbe and Ms. Strouse are still defendants in an ongoing criminal matter because they have not yet been sentenced, they are in that position by their own request. They asked for and received a one-year continuance of sentencing. Furthermore, Ms. Strouse and Mr. Abbe are not entitled to a blanket invocation of the privilege, but must make a specific showing to this Court that responding to the discovery requests will in fact tend to prejudice their rights, either in regard to new criminal charges, the existing criminal case, or sentencing. This they have wholly failed to do. Having worked out an agreement with the government and pled nolo contendere in the criminal case and thus insulated themselves from the use of those pleas in this civil case, defendants Abbe and Strouse now propose to use the Fifth Amendment to prevent the plaintiffs from proving the substance of their case against them.
 
 
 33
 It is the opinion of this Court that defendants Abbe and Strouse have available to them all the tools necessary to extricate themselves from the position into which they put themselves. They may request an immediate sentencing, and thus alleviate their fears that their responses to discovery may impact upon their sentencing, or they may plead guilty and alleviate the necessity on the part of the plaintiffs to prove the substance of the claims in the Complaint, since those pleas would be admissible here. They may not simply refuse to respond to the plaintiffs' legitimate discovery requests and suffer no consequences. The Fifth Amendment does not protect defendants in the position of Lowell Abbe and Carolyn Strouse from judgment for failure to comply with the Civil Rules.
 
 
 34
 (Emphasis added.)
 
 
 35
 The default judgments were entered three days later.[6]
 
 
 36
 It is apparent that the district court's decision to enter default judgments against Abbe and Strouse as a sanction for noncompliance with the court's discovery orders was based upon its conclusion that the two were not entitled to invoke the fifth amendment and that even if they were, they had not done so properly.
 
 
 37
 We think the court was mistaken on both counts.
 
 
 38
 a.
 
 
 39
 The district court's first ground for rejecting Abbe's and Strouse's fifth amendment claims was that the privilege against self-incrimination did not survive Abbe's and Strouse's nolo pleas in the criminal proceedings. But, Abbe and Strouse's fifth amendment rights did survive their nolo plea as to the bank fraud charges because they remained vulnerable to further federal and state prosecution. A nolo plea should be treated as " 'an admission of guilt for the purposes of the case.' " Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926), as quoted in United States v. Heller, 579 F.2d 990, 998 (6th Cir.1978). Although a defendant pleading guilty to an offense waives the constitutional privilege with regard to the offense admitted, he does not thereby submit "a blanket waiver as to other offenses that might form the basis of later charges." United States v. Seavers, 472 F.2d 607, 611 (6th Cir.1973) (citation omitted). Accord United States v. Damiano, 579 F.2d 1001, 1002 (6th Cir.1978).
 
 
 40
 In entering their nolo plea as to the bank fraud charges, Abbe and Strouse made no agreement with the government precluding further federal prosecution for actions ascribed to them in the banks' civil complaint. Additionally, they were still potential defendants in state prosecution. "The privilege [against self-incrimination] protects a federal witness against incrimination under state as well as federal law." Seavers, 472 F.2d at 610 (citing Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)). Accord Damiano, 579 F.2d at 1003.
 
 
 41
 Moreover, Abbe and Strouse had not been sentenced on their bank fraud convictions at the time of any of the scheduled depositions. A number of circuits have recognized that a convicted but unsentenced defendant may avail himself of the fifth amendment privilege against self-incrimination. See, e.g., United States v. Houghton, 554 F.2d 1219, 1222 (1st Cir.1977), cert. denied, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977); United States v. Domenech, 476 F.2d 1229, 1231 (2d Cir.), cert. denied, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973); United States v. Lowell, 649 F.2d 950, 955 (3rd Cir.1981); United States v. Tindle, 808 F.2d 319, 325 (4th Cir.1986), cert. denied, --- U.S. ----, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989); United States v. Khan, 728 F.2d 676, 680 (5th Cir.1984); United States v. Paris, 827 F.2d 395, 399 (9th Cir.1987); United States v. Lugg, 892 F.2d 101, 102-03 (D.C.Cir.1989). Although this circuit has not had occasion to decide the question, we agree with our sister circuits and subscribe to the now settled rule that fifth amendment self-incrimination rights continue in force until sentencing.
 
 
 42
 It is irrelevant for constitutional purposes that Abbe and Strouse had not been sentenced "by their own request," or that they had "available to them all the tools necessary to extricate themselves from the position into which they put themselves." The power to delay or not to delay the sentencings in the criminal case was in the district court, albeit in another judge, but not in the defendants. As long as the court chose not to impose sentence, Abbe and Strouse were entitled to invoke whatever fifth amendment protection resulted from their status as unsentenced defendants.
 
 
 43
 We conclude that the fifth amendment privilege against self-incrimination was available to Abbe and Strouse on the dates of their scheduled depositions.
 
 
 44
 b.
 
 
 45
 The district court's second ground for rejecting Abbe and Strouse's fifth amendment claims was that the two had not invoked the privilege properly:
 
 
 46
 Furthermore, Ms. Strouse and Mr. Abbe are not entitled to a blanket invocation of the privilege, but must make a specific showing to this Court that responding to the discovery requests will in fact tend to prejudice their rights, either in regard to new criminal charges, the existing criminal case, or sentencing. This they have wholly failed to do.
 
 
 47
 Certainly a person who seeks, on fifth amendment grounds, to avoid sanctions otherwise imposable for disobeying a court's order to give evidence must show how the requested discovery will be incriminating. However, the district court apparently misapprehended the procedural applicability of that requirement here.
 
 
 48
 A witness who invokes the privilege against self-incrimination need not initiate judicial proceedings and request a ruling on the constitutional propriety of the invocation. Courts afford the privilege-claimant an inquiry on the merits as a matter of course once the claimant, responding to a motion to compel submission of the evidence, states that the claimant is relying upon the privilege. See, e.g., In re Morganroth, 718 F.2d 161, 166-69 (6th Cir.1983); United States v. Goodwin, 625 F.2d 693, 700-02 (5th Cir.1980); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir.1981). The claimant need not have taken any affirmative procedural steps itself to obtain a ruling upholding its fifth amendment privilege claim. Such steps are no more necessary when the threatened sanction is a default judgment for failure to cooperate in discovery than when the threatened sanction is an adjudication of civil or criminal contempt. Fendler, 650 F.2d at 1160.
 
 
 49
 Customarily, the district court examines the claimant to determine the validity of its claim. United States v. Gomez-Rojas, 507 F.2d 1213, 1220 (5th Cir.1975). In some cases, the appellate court has required the district court to initiate a hearing to determine whether the alleged fears of self-incrimination are legitimate. Id. In any case, the privilege claimant does not initiate such activities; rather, it is "incumbent upon the trial court ... to conduct a particularized inquiry...." In re Endres, 103 B.R. 49, 54 (Bankr.N.D.N.Y.1989) (emphasis added). Naturally, the claimant must cooperate in supplying the court with relevant information, to the extent consistent with preservation of the privilege. See Hoffman v. United States, 341 U.S. 479, 486-87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).
 
 
 50
 In In re Morganroth, supra, for example, petitioner was president of a company that had defaulted on a loan it obtained from a Teamsters Union pension fund. He had been ordered by the district court to answer deposition questions regarding the loan after he initially declined to do so on fifth amendment grounds. Id. at 163-64. Although he had previously been acquitted of any criminal wrongdoing in the matter and had answered the identical questions as a nonparty in a prior civil proceeding, he declined to answer the questions because he was afraid he might incriminate himself of perjury in relation to testimony he had previously given on the same issues. Id. at 165.
 
 
 51
 Rather than decide whether this court would adhere to the rule that waiver of the privilege in one proceeding constitutes waiver of the privilege on the same subject matter in a second proceeding, we examined the type of showing a witness must make to properly invoke the privilege against self-incrimination and thus avoid sanctions for refusal to obey the court's order to testify. Id. at 166. That discussion is helpful to our resolution of the issue at hand. This court said:
 
 
 52
 Before a witness ... is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege. It is for the court to decide whether a witness' silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity. A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. A witness must, however, show a "real danger," and not a mere imaginary, remote or speculative possibility of prosecution. While the privilege is to be accorded liberal application, the court may order a witness to answer if it clearly appears that he is mistaken as to the justification for the privilege in advancing his claim as a subterfuge. A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.
 
 
 53
 Id. at 167 (citations omitted) (emphasis added). While this statement describes the showing a witness must make who is attempting to invoke the privilege, it also describes the responsibility of the district courts to determine the propriety of the refusal to testify with regard to each question the witness declines to answer.
 
 
 54
 Both Abbe and Strouse invoked the fifth amendment privilege at their respective depositions, May 8 and 9, 1989, in response to specific questions that counsel for the banks propounded. Both defendants relied primarily on the general phrase, "In response to your question, I hereby invoke my fifth amendment privilege against self incrimination." Though very broad, invocation of the privilege by pro se defendants Abbe and Strouse should have prompted the banks to seek a ruling respecting the validity of the claim of privilege as to each question Abbe and Strouse refused to answer.[7] The court could then have 1) required the two to demonstrate that the requested answers would be incriminating; 2) made a determination as to the constitutional propriety of the refusal to answer the questions put to them; 3) ordered them to answer such questions as were not privileged; and/or 4) granted a protective order regarding privileged matters, if any.
 
 
 55
 None of this was done.[8] Instead, Abbe and Strouse invoked their constitutional privilege when the banks first attempted discovery. The plaintiffs sought an order compelling answers. The district court issued such an order, threatening the deponents with Rule 37 sanctions if they did not comply and rejecting their fifth amendment claim, in gross, totally inapplicable due to the earlier nolo contendre pleas. Neither the plaintiffs nor the court raised the issue of whether the information plaintiffs' sought would "in fact tend to prejudice their rights ...," the court being under the impression that the fifth amendment was simply not applicable.
 
 
 56
 The court not only was mistaken in holding the fifth amendment privilege to be absolutely unavailable to Abbe and Strouse, the court also was mistaken in declining to consider the witness' request for a protective order while, at the same time, imposing upon them the affirmative duty to "make a specific showing to this court that responding to the discovery requests will in fact tend to prejudice their rights, either in regard to new criminal charges, the existing criminal case, or sentencing."
 
 
 57
 For the foregoing reasons, we hold that the district court's entry of a default judgment against Abbe and Strouse was error. We shall vacate the district court's order entering default judgment against those defendants, and remand the case as to them for further proceedings.[9]
 
 
 58
 We turn now to the propriety of the default judgment regarding the other defendants.
 
 B.
 
 59
 As previously noted, the district court entered the May 19, 1989, default judgment against the other defendants as a sanction because for their failure to remedy prior discovery violations as alleged in the banks' February 9, 1989, motion for a default judgment. In that motion, the banks chronicled the remaining individual defendants' failure to appear at scheduled depositions in June of 1987, July of 1987, January of 1988, and January of 1989. The banks also noted the corporate defendants' failure to appear at depositions scheduled for June of 1987, January of 1988, and January of 1989.
 
 
 60
 None of the defendants appeared at the many scheduled depositions despite the district court's October 27, 1987, order compelling them to submit to discovery. Defendants Norman and Maria Abbe, who unsuccessfully had filed a motion for a protective order exempting them from discovery due to their advanced age and ill health, failed to appear at depositions which were scheduled to last no more than one hour per day as an accommodation to their poor health. They also never responded to the banks' written discovery requests of December 27, 1988. Defendants Amerind and Triad did not respond to written discovery requests submitted by the banks in 1987, and produced none of the requested documents. The same is true of the remaining corporate defendants who had been sent written discovery requests in 1986.
 
 
 61
 The district court did not immediately rule on the banks' February 9, 1989, motion, having also postponed ruling on the banks' prior motion for sanctions in the hope that defendants would cooperate. The court finally granted the banks' motion for default judgment on May 19, 1989, and defendants now assert that in so doing the court abused its discretion. Defendants claim the court should have taken into account that all of them were proceeding pro se, that defendants Norman and Maria Abbe cooperated in the early stages of discovery and were in poor health, and that the corporate defendants allegedly were never specifically ordered to produce information.
 
 
 62
 We conclude that the district court did not abuse its discretion in sanctioning these defendants by entering the default judgment against them.
 
 
 63
 In Regional Refuse, supra, we discussed the factors a district court should evaluate in determining whether to impose sanctions under Rule 37(b)(2)(C) for noncompliance with discovery orders:
 
 
 64
 --Whether the failure to comply was attributable to "inability" as opposed to "willful bad faith or any fault of the [witness]." Adkins v. United States, 816 F.2d 1580 (Fed.Cir.1987);
 
 
 65
 --Whether "the adversary was prejudiced by the dismissed party's failure to cooperate in discovery." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951 (4th Cir.1987);
 
 
 66
 --Whether "the [sanctioned] party was worried that failure to cooperate could lead to dismissal." Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744 (5th Cir.1987); and
 
 
 67
 --Whether "less drastic sanctions" were considered. Founding Church of Scientology v. Webster, 802 F.2d 1448 (D.C.Cir.1986).
 
 
 68
 842 F.2d at 154-55.
 
 
 69
 Applying these factors here, we note that none of the defendants, who now collectively concede their failure to appear at the various scheduled depositions, allege an inability to comply with the bank's court-sanctioned discovery requests. Their repeated failure to appear on numerous occasions suggests their "willfulness, bad faith, or fault." The banks were totally frustrated in their attempt to initiate discovery because of the defendants' refusal to appear at depositions or to respond to the banks' written requests. The court's delay in ruling on the banks' first motion for sanctions, followed by its order compelling the defendants to comply with discovery, was sufficient to put them on notice of the consequences of their failure to cooperate. Also, the defendants' lack of response to the court's order to compel discovery, despite the court's three-month long delay in addressing the banks' motion, demonstrated the futility of any lesser sanctions.
 
 
 70
 For these reasons, we hold that the district court's entry of a default judgment against all the defendants, except Abbe and Strouse and those with whom the banks had otherwise resolved its dispute, was not an abuse of discretion.
 
 III.
 
 71
 The defendants raise, collectively, five additional issues. We discuss them seriatim.
 
 A.
 
 72
 Defendants claim the default judgment must be set aside because it is based upon a complaint whose allegations, even if proved, failed to state a RICO violation. They argue that the banks failed to charge each of them with long-term involvement in a pattern of racketeering. On that basis, they argue that the judgment against them should be dismissed.
 
 
 73
 Defendants did not assert this argument in the district court and ordinarily we do not consider issues raised for the first time on appeal. See, e.g., Boddie v. Am. Broadcasting Companies, Inc., 881 F.2d 267, 268 n. 1 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990); Yeiter v. Secretary of Health & Human Services, 818 F.2d 8, 11 (6th Cir.), cert. denied, 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987). But having examined the banks' complaint as once amended, we reject defendants' argument on its merits.
 
 
 74
 In their complaint, the banks alleged that from September 24, 1980, "up to the present date," October 9, 1986, all defendants were engaged in a conspiracy it labelled the "Abbe Enterprise." The banks also alleged that from January 10, 1979, to October 9, 1986, the same defendants were involved in a conspiracy called the "Strouse Enterprise." The banks claimed that, through these enterprises, defendants violated 18 U.S.C. Sec. 1962(a) through (d)[10] when they committed mail fraud, wire fraud, interstate transportation of fraudulently obtained property, and bankruptcy fraud. The banks claimed these illegal acts occurred on numerous specified dates throughout a seven-year period as part of a scheme to defraud several Ohio banks.
 
 
 75
 The banks' complaint thereby sufficiently alleged a RICO violation. When determining whether a complaint states a claim upon which relief may be granted, we take the factual allegations of the complaint as true to determine whether, if proved, they entitle claimant to relief. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988) (citations omitted). In this instance, the banks claimed that defendants' criminal acts were related and that defendants' criminal activity was continuous as required under H.J., Inc. v. Northwestern Bell, --- U.S. ----, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). We think a civil RICO violation was adequately pleaded.
 
 B.
 
 76
 Defendants claim the district court erred in calculating the amount of damages, $1,896,723.15 plus per diem interest at a continuing rate of $414.27 from and after January 31, 1989, the closing date of discovery, for Bank One of Cleveland, N.A., and $513,367.11 plus per diem interest at a continuing rate of $100.47 from and after January 31, 1989, for Bank One of Akron, N.A., in its entry of a default judgment against them. Relying on Grantham & Mann, Inc. v. Am. Safety Products, Inc., 831 F.2d 596, 605-06 (6th Cir.1987), for the proposition that RICO claimants may recover only such damages as are caused by RICO-violative conduct, defendants Triad and Amerind also assert that they were involved in none of the alleged illegal acts listed in the banks' complaint and should not be held liable for RICO damages.
 
 
 77
 Given that our review of the propriety of a district court's imposition of sanctions for discovery noncompliance is ordinarily upon an abuse of discretion standard, we believe our review of an appeal by the sanctioned parties of the amount of a default judgment entered against them is only for abuse of discretion. See Lothschuetz v. Carpenter, 898 F.2d 1200, 1204 n. 3 (6th Cir.1990).
 
 
 78
 Having failed to submit evidence challenging the banks' February 9 and May 19, 1989, submissions with regard to damages, defendants cannot now seek review of the court's reliance on the banks' figures; there was no impropriety in the distribution of damages since RICO defendants may be held jointly and severally liable. Fleischhauer v. Feltner, 879 F.2d 1290, 1301 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990).
 
 
 79
 We cannot conclude that the district court abused its discretion in calculating the amount of damages against the defendants in this case.
 
 C.
 
 80
 Revere Pinnacle claims the district court erred in granting the banks' motion to add it as a party defendant and then immediately entering default judgment in the case without Revere Pinnacle ever having been served with the complaint or having made an appearance. Revere Pinnacle was a transferee of property formerly under the control of Abbe through Triad and Amerind and attached by the banks in the early stages of the proceedings.
 
 
 81
 Although Revere Pinnacle was not listed among the defendants against whom the district court's default judgment was entered, it appears that the judgment declared "invalid, null, and void" a conveyance of real estate in which Revere Pinnacle was a grantee. It is elemental that a judgment rendered by a court lacking personal jurisdiction over the defendant is void as to that defendant. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 419, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456 (1957); Stoll v. Gottlieb, 305 U.S. 165, 176, 59 S.Ct. 134, 139, 83 L.Ed. 104 (1938). Furthermore, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987).
 
 
 82
 While the extent to which Revere Pinnacle was prejudiced by the default judgment is unclear, it is clear that it was affected thereby, without notice, and without having been subjected to the jurisdiction of the court. We must, therefore, set aside the order adding Revere Pinnacle as a party defendant and the judgment respecting it.
 
 D.
 
 83
 Strouse asserts that the district court erred 1) in conducting a prejudgment attachment hearing regarding certain property of Atwater Enterprises, Inc. and Portage Angus Farms, Inc. without allowing Strouse to be present, and 2) in denying her motion for a rehearing. She claims that evidence prejudicial to her was taken on that occasion, entitling her to be present.
 
 
 84
 The district court excluded Strouse from participation in the hearing on the grounds that, "Miss Strouse has been served with notice of all these matters, but has not requested this hearing and no property owned by Miss Strouse is property against which prejudgment attachment is being sought." The court also noted that Strouse would have ample opportunity to raise "any defenses she may have" regarding this matter at later proceedings pursuant to Ohio's prejudgment attachment procedures. See Ohio Rev.Code Sec. 2715.01, et seq.
 
 
 85
 Strouse has not demonstrated to us that, contrary to the district court's finding, she had an interest in the property in question. "Findings of fact ... shall not be set aside unless clearly erroneous...." Fed.R.Civ.P. 52(a). Nor has she shown that she requested the hearing or properly raised this issue below. We, therefore, reject Strouse's argument on appeal.
 
 E.
 
 86
 Finally, defendants claim the district court erred by not conducting a hearing and in not making specific findings of fact regarding their November 18, 1985, motion to disqualify the law firm representing the banks in this litigation.
 
 
 87
 In their disqualification motion, defendants alleged that Roetzel & Andress was not qualified to represent the banks by virtue of the fact that Roger J. Stevenson, then a member of Roetzel & Andress, had been appointed trustee in bankruptcy for W.R.S., Inc. and Western Reserve Saddlery, Inc., defendants in the banks' suit. Despite the fact that a successor trustee had been appointed, defendants alleged that Roetzel & Andress was precluded from representing the banks because of a conflict of interest. The district court denied this motion by a marginal order entered October 7, 1986.
 
 
 88
 This court generally disapproves of marginal orders under the requirement of Fed.R.Civ.P. 58 that "[e]very judgment shall be set forth on a separate document." See Akers v. Ohio Dep't of Liquor Control, 902 F.2d 477, 480 (6th Cir.1990); United States v. Woods, 885 F.2d 352, 353 (6th Cir.1989). One reason for disfavoring marginal orders is the difficulty of properly reviewing such dispositions, a difficulty we face now.
 
 
 89
 Because it is not clear to us that the district court undertook "an appropriate inquiry" as is required in resolving the motion for disqualification, see Manning v. Waring, Cox, James, Sklar and Allen, 849 F.2d 222, 227-28 (6th Cir.1988), and because the district court's marginal entry provides us no reasoning for the court's decisions, we remand this portion of defendants' appeal. On remand, the district court shall make findings of fact and conclusions of law as to the motion to disqualify Roetzel & Andress. The court should also determine the extent to which its reconsidered resolution of this issue affects the portion of the default judgment we have affirmed.
 
 IV.
 
 90
 For the foregoing reasons, the district court's order entering default judgment as to Abbe and Strouse is VACATED, and as to the other defendants it is AFFIRMED. The order adding Revere Pinnacle as a defendant and the order denying the motion to disqualify the law firm are set aside.
 
 
 91
 The case is REMANDED to the district court for further proceedings.
 
 
 
 [1]
 18 U.S.C. Sec. 1964(c) provides:
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.
 
 
 [2]
 By our count, Abbe was asked some 260 questions. He invoked the fifth amendment 54 times and on 33 additional occasions answered affirmatively to the question whether he would refuse, if asked, to answer questions touching certain named subject matter. Strouse was asked approximately 340 questions. She invoked the privilege 41 times and responded affirmatively 35 times when asked if she would refuse to answer certain questions
 
 
 [3]
 The district court dismissed the case against defendants Barbara Abbe, Martin Abbe, and Dean Abbe, who had settled with the banks. The court did not enter default judgment against defendant Edward A. Turner, against whom the proceedings were to continue
 
 
 [4]
 Fed.R.Civ.P. 37(b)(2)(C) provides, in pertinent part:
 If a party ... designated under Rule 30(b)(6) or 31(a) to testify ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others ... [it may issue a]n order ... dismissing the action ... or rendering a judgment by default against the disobedient party....
 
 
 [5]
 Abbe and Strouse also argue that mitigating circumstances counseled against the district court's entry of judgment against them. Those mitigating circumstances include their proceeding pro se in the civil RICO suit, reliance on the advice of their criminal attorneys in declining to answer the deposition questions, the fact that they filed both the motion for a protective order and a request to extend the court's May 19, 1989, deadline, the allegation that Strouse's criminal attorney needed many of the requested documents for the criminal case, and the allegation that the documents the banks sought were available elsewhere. Because we reverse the district court's decision on fifth amendment grounds, we need not address the merits of these claims
 
 
 [6]
 We pass, as largely academic, the interesting question whether our standard of review is de novo or abuse of discretion when a district court's decision imposing sanctions under Fed.R.Civ.P. 37 is challenged as an "abuse of discretion" but is based upon a claim that a constitutional privilege precluded imposition of any sanction
 
 
 [7]
 Fed.R.Civ.P. 37(a)(2) provides, in pertinent part:
 If a depondent fails to answer a question propounded or submitted under Rules 30 or 31 ... the discovering party may move for an order compelling an answer....
 If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(f).
 
 
 [8]
 Indeed, prior to their appearance at the May 8 and 9 depositions, Abbe and Strouse filed a joint motion for a protective order asking the court's protection against being required to submit to discovery concerning matters they believed to be potentially incriminating. The district court did not rule upon the motion and did not address it until May 19, 1989, the day it entered the default judgment against them, and then it denied the motion without explanation and only by a marginal notation
 
 
 [9]
 As part of her appeal on this issue, Strouse also argued that the district court erred in not permitting her to engage in discovery of her own until she abandoned her self-incrimination claim and was fully deposed. For the same reason we set aside the default judgment against her, we think this lesser sanction was inappropriate. On remand, after determining the constitutional propriety of Strouse's assertion of the privilege as to specific subject matter, and after giving her a reasonable opportunity to make such answers as are not privileged, the court should re-evaluate the propriety of this sanction
 
 
 [10]
 18 U.S.C. Sec. 1962 states:
 (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
 (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of any lawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.