BANK ONE, AKRON, N.A. et al., Appellees,

v.

ATWATER ENTERPRISES, INC. et al.; Revere Pinnacle Group, Inc., Appellant.

[Cite as *Bank One, Akron, N.A. v. Atwater Ent., Inc.* (1996), 115 Ohio App.3d 461.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 96-P-0002.

Decided Oct. 28, 1996.

462

*George W. Rooney, Jr., Roger J. Stevenson* and *Dale Katzenmeyer*, for appellees.

*James W. Childs*, for appellant.

FORD, Presiding Judge.

This is an appeal from a judgment of the Portage County Court of Common Pleas in favor of appellees, Bank One, Akron, N.A. and Bank One, Cleveland, N.A., and against appellant, Revere Pinnacle Group, Inc., for property commonly known as 672 Stroup Road, Atwater, Ohio.[1]  This case was previously appealed to this court with other parties participating, and the cause was reversed and remanded for further proceedings solely in regard to appellant's ownership interest in the property.  See *Bank One, Akron, N.A. v. Atwater Ent., Inc.* (1994), 96 Ohio App.3d 59, 644 N.E.2d 667.

Atwater Enterprises, Inc. ("Atwater"), a prior owner of the property in question, transferred the property to Amerind International, Inc. ("Amerind") on

---

1.  The other defendants are no longer part of this case.

July 26, 1985. Subsequently, Amerind transferred the property to appellant on June 23, 1986.

On August 12, 1985, appellees filed a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action against Atwater, Amerind and others in federal court. See *Bank One of Cleveland, N.A. v. Abbe* (C.A.6, 1990), 916 F.2d 1067, 1070. Appellant was not a party to this action. *Id.* at 1081.

A default judgment was entered in favor of Bank One of Cleveland against Atwater, Amerind and others, jointly and severally, in the amount of $1,896,-723.15 plus interest by the federal district court on May 19, 1989. *Id.* at 1072. The district court also entered judgment in favor of Bank One of Akron in the amount of $513,367.11 plus interest. *Id.*

The district court also determined that the conveyance from Atwater to Amerind was invalid, and accordingly was null and void. *Id.* at 1081. The court then determined that appellant, based on the foregoing, also had no interest in the property because it was last in a chain of title that contained a fraudulent conveyance, even though it was not previously a party in that case.

On appeal from this judgment, the Sixth Circuit concluded that the district court did not have personal jurisdiction over appellant and overturned those portions of the district court's order concerning the same. *Id.* at 1081. On remand concerning other issues, the district court upheld the default judgments.

Appellees filed a judgment lien against the premises on May 24, 1989, and this action commenced in state court. The trial court ultimately granted summary judgment in favor of appellees, and the first appeal ensued. On appeal, this court determined that the trial court erred when it found that Atwater owned the property, despite the fact that a deed existed showing Revere, in fact, as titled owner of the property, based *solely* upon the federal district court's decree. *Atwater*, 96 Ohio App.3d at 64, 644 N.E.2d at 669–670. This court reversed and remanded the cause as "there remains a genuine issue as to the status of [appellant's] claim of title and whether the liens of record may be executed against the subject property." *Id.* at 67, 644 N.E.2d at 672.

On remand, the cause was tried before a magistrate and concluded on June 6, 1995. The report of the magistrate was issued August 11, 1995. Appellant filed its objections on November 8, 1995, and appellees filed a single objection regarding the inclusion of Bank One of Akron as a party in the report, as it had been omitted in the decision. On December 7, 1995, the trial court overruled all of appellant's objections and sustained appellees' objection. The trial court then adopted the remainder of the report and set aside the quitclaim deed from

Amerind to appellant.[2]  From this order, appellant now appeals raising the following as error:

"1.  The trial court committed error in affirming the magistrate's findings of fact and conclusions of law where the magistrate had a non-waivable and mandatory duty to recuse [himself] from hearing the case.

"2.  The court below committed error and abused its discretion by not following controlling law and particularly the law of the case.

"3.  The trial court erred by permitting [appellees'] standing to challenge the conveyance to [appellant], the evidence of the receipts and any of the contract terms between [appellant] and its grantor for which the trial court lacked subject matter jurisdiction.

"4.  The trial court erred in failing to rule as a matter of law [appellees'] claims are barred by claim preclusion under the principles of *res judicata* for failing to litigate the issues of fraud and privity in the civil RICO case against [appellant].

"5.  The findings of fact and conclusions of law in the court below are against the manifest weight of the evidence and are contrary to law."

██  In appellant's first assignment, it is contended that reversible error was committed when the magistrate failed to recuse himself from the case due to a conflict.  It is well settled that a magistrate, like a judge, cannot preside over a case in which he has an interest, either financial or personal.  See *James v. James* (1995), 101 Ohio App.3d 668, 656 N.E.2d 399.  In this case, the following discussion took place:

"[Magistrate]:  All right.  I see [appellees]—in looking at [appellees'] Witness List, I noticed that two of [appellees'] witnesses—potential witnesses, are clients of mine.  * * *

"Now, I just feel that I should explain that to the parties and if we don't have any objection, I can still hear this matter.  * * *

"If they are called as witnesses, certainly the fact that they're clients of mine * * * doesn't have any impact of [*sic*] my analysis of the case or handling [of] this matter.  [I] wouldn't be influenced one way or the other.  But, if either of the parties object, then I will not hear the case.

"  *  *  *  *

---

**2.**  We note that this deed was defective as it did not have the required number of witnesses. This defect was cured after the judgment liens were placed on the property.

"[Appellant's counsel]: Your honor, we are surprised and shocked that you are counsel * * *. We would find that objectionable.

" * * *

"[Appellees' counsel]: We have no intention of calling [one of the witnesses] even though he was listed. [The other witness] would be a rebuttal witness in this and would not be part of the [appellees'] case.

" * * *

"[Magistrate]: All right. Well, like I said, I don't feel that I am precluded from hearing the case. But, on the fairness on the context of what we are doing here, I feel that I should remove myself.

"If the parties would like to remain here, I believe Judge Martin will be able to hear the case which I have already made arrangements for that.

" * * *

"[Appellees' counsel]: Your honor, with the understanding that this would remove the Magistrate's conflict—potential conflict with this case, [appellees] also withdraw [the second witness] from their Witness List.

"[Magistrate]: All right. Mr. Childs [appellant's counsel], is there any further objection?

"[Appellant's counsel]: We will withdraw any further objection.

"[Magistrate]: Let me say this. Their presence in this case wouldn't influence me in any kind of way. But, I did feel it was important to reveal that."

Following the hearing and the rendering of findings of fact and conclusions of law in the magistrate's report adverse to its position, appellant, in its one-hundred-one-page objections to the magistrate's report, asserted that the magistrate was required to recuse himself for this so-called conflict due to his "bias," "prejudice," "interest," "displayed animus," "fanatical bias" and other equally serious accusations.

As the court stated in *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph one of the syllabus:

"A party will not be permitted to take advantage of an error which he himself invited or induced. (*Lester v. Leuck* [1943], 142 Ohio St. 91 [26 O.O. 280, 50 N.E.2d 145], paragraph one of the syllabus, followed.")

In this case, the magistrate offered to remove himself from the case upon objection by either party, at which point appellant objected. After the objectionable witnesses were withdrawn by appellees, appellant withdrew any objection despite the fact that provision had been made to have Judge George F. Martin

preside over the hearing should either party object to the magistrate hearing the case. In addition to appellant waiving or creating this alleged error with neither witness remaining in the case, and given the statements by the magistrate on the record that his recommendation would not be influenced by the presence of these persons, we do not perceive how the magistrate was biased, and do not believe that he or the trial court erred in not mandating his recusal. Once these witnesses were removed, any potential conflict was eliminated.

Appellant also contends that the magistrate's recusal was mandatory and not subject to waiver, and refers us to *James, supra.* However, in *James,* 101 Ohio App.3d 668, 656 N.E.2d 399, the referee elected to remain on a case where one of the participating attorneys was his former law partner, and the court held that pursuant to Canon 3(C)(1)(c) of the Code of Judicial Conduct, recusal was mandated. *Id.* at 677, 656 N.E.2d at 404–405. However, unlike the situation in *James,* here there was no colorable violation of Canon 3 that would necessitate a recusal. The two witnesses who presented a *possible* conflict were removed from the witness list, at which point any conflict was eliminated. The magistrate's willingness to have Judge Martin sit on the case upon any objection indicated his desire to be fair, both in reality and in perception. We would also note that had appellant remained convinced that the magistrate should recuse himself and the magistrate had refused to step aside, then it could have filed an affidavit of prejudice with the Chief Justice of the Supreme Court of Ohio pursuant to R.C. 2701.03.

Appellant's brief, like the objections below, is replete with bombastic rhetoric concerning the professionalism, integrity and honesty of the magistrate in this case. After *withdrawing* the objection because any potential conflict was removed, appellant accuses the magistrate of conduct in reaching his decision that, by any reasoned view, simply blames an adverse result in a hotly contested litigation on some dishonest or unprofessional conduct on the part of the magistrate. This unabashed attack on the magistrate, given the facts in this case, is insulting to this court. Appellant *specifically* and *unambiguously* withdrew any objection *after* the witnesses that could have created a conflict were withdrawn, and after the magistrate had expressed that he perceived no conflict. Appellant chose to withdraw its objection even though Judge Martin was available to hear the case. To withdraw an objection as appellant has done here and then raise such extreme accusations when the result in the decision is not to its liking is disingenuous at *best,* and may well be a violation of DR 8–102(B) by appellant's counsel. Appellant's first assignment is completely without merit.

In the second assignment, appellant contends that the trial court erred when it "failed to follow controlling law." We note that although this assignment is presented as a single error, it is apparently appellant's general position that the

trial court, in several distinct manners, misapplied legal principles. We note that these *separate* issues should have been briefed as *independent* assignments of error, rather than in the disjointed manner in which they have been presented to this court. App.R. 16(A).

■ First, appellant contends that the trial court erred when it exceeded the mandate from this court on remand. We disagree. Simply stated, this court stated in the initial appeal that "the cause is remanded for further proceedings consistent with this opinion. Specifically, there remains a genuine issue as to the status of [appellant's] claim of title and whether the liens of record may be executed against the subject property." *Atwater*, 96 Ohio App.3d at 67, 644 N.E.2d at 672. Somehow, appellant believes that this mandate from this court, which reversed the granting of summary judgment and remanded the case to resolve the foregoing pertinent issues of fact, precluded the examination of appellant's title. This contention is without merit. This court merely determined that summary judgment was inappropriate because there remained genuine issues of material fact to be determined.

Appellees have contended throughout this litigation that the conveyance to appellant was void pursuant to the Fraudulent Transfer Act, and the mandate from this court was to determine the status of appellant's claim on the property. See R.C. Chapter 1336. The specific basis for the reversal in the initial appeal was the trial court's inappropriate utilization of the judgment of the federal court action, an action to which appellant was not a party, as the basis for granting summary judgment against appellant. *Atwater*, 96 Ohio App.3d at 65–66, 644 N.E.2d at 670–671. Thus, the trial court did not exceed the mandate of this court on remand.

■ As the court held in *Fifth Third Bank of Columbus v. McCloud* (1993), 90 Ohio App.3d 196, 199, 628 N.E.2d 131, 133, where the conveyance in question predates the 1990 amendment to the Fraudulent Conveyance Act, which completely rewrote its provisions, the prior version applies.[3] Former R.C. 1336.04 provided:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without a fair consideration."

As the court stated in *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio* (1987), 37 Ohio App.3d 162, 164, 524 N.E.2d 915, 917, "R.C. 1336.04, conveyances resulting in insolvency, labels certain transfers fraudulent without

---

3. Although neither party makes reference to the prior version, it is clearly the controlling law.

regard to actual intent[.]" In this case, the magistrate found that "this transfer of the Premises was done *without any consideration, rendered Amerind insolvent,* and was done at a time when Amerind was about to [be] added to a lawsuit brought by [appellees]." (Emphasis added.) While appellant devotes a great deal of time regarding its bona fide purchaser status, which is an important factor in the revised Fraudulent Conveyance Act,[4] this exception was not in existence in the prior Act. The prior Act invalidated the conveyance and left a bona fide purchaser to pursue the party that perpetrated the fraud. Accordingly, those portions of appellant's argument are without merit.[5]

A review of the record also demonstrates that the trial court's determination that sufficient consideration was not paid for the property was supported by the evidence. Appellant contends that receipts demonstrating the payment of $750,000 and testimony regarding the same evidenced the existence of the substantial payment, and that a reversal is in order for not making that finding.

It is well established that "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178, 180; *Pasqualone v. Pasqualone* (1980), 63 Ohio St.2d 96, 17 O.O.3d 58, 406 N.E.2d 1121. As the court stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

The magistrate in this matter heard the testimony from the witnesses and had the opportunity to assess their credibility. The magistrate noted that each of the receipts predated appellant's formation as a business entity, and several "predate any knowledge of the availability of the Premises in November, 1980." Testimony was also produced that the signatures on the receipts may have been falsified. The magistrate also noted that no credible evidence was produced regarding the source of the funds or any indication where these funds were deposited following any alleged transfer, and no tax records were available or produced to demon-

---

4. See R.C. 1336.08 in the new Act, which protects bona fide purchasers from the provisions of the Fraudulent Conveyance Act.

5. We note that even if the revised Fraudulent Conveyance Act controlled in this case, the result would be unchanged as more than ample evidence was presented showing that appellant did not take without notice for valuable consideration. See discussion of appellant's fifth assignment, below. Further, it is not contested that the quitclaim deed to appellant was defective as it did not have the requisite two witness signatures, and this defect was not remedied until *after* the liens were placed on the property.

strate the consummation of the sale. The magistrate concluded that "[t]he receipts for payments for the Premises were fraudulently prepared and the signatures forged, and, considering all of the evidence, did not confirm that any payments actually were made by [appellant] for the Premises." We note that once certain "badges of fraud" are produced by a creditor that tend to indicate a fraudulent transfer, including forgery and insolvency, the burden shifts to the person defending the transaction to show that adequate consideration was paid. *DiMazzio*, 37 Ohio App.3d at 166, 524 N.E.2d at 918–919, citing 24 Ohio Jurisprudence 3d (1980) 422, Creditors' Rights, Section 754; *In re Maston* (S.D.Ohio 1984), 44 B.R. 880, 882–883; *In re Poole* (N.D.Ohio 1981), 15 B.R. 422, 431–432; *In re Estate of Reed* (Wyo.1977), 566 P.2d 587, 589; *Bentley v. Caille* (1939), 289 Mich. 74, 286 N.W. 163. The magistrate then went on to hold that the conveyance was made without proper consideration.

While appellant disagrees with this holding regarding the consideration paid for this property, a review of the record demonstrates that testimony was elicited as detailed above, and we cannot say that the trial court abused its discretion when it adopted the magistrate's report, as sufficient, competent and credible evidence was produced in the hearing to support that result. Appellant asks this court to reevaluate the credibility or weight to be assigned to the testimony and evidence in this case. However, this *de novo* review is inappropriate.

Further, appellant apparently does not take issue with the finding that the transaction rendered Amerind insolvent, which is alone sufficient to implicate R.C. 1336.04 (pre–1990), regardless of appellant's intent or knowledge. *DiMazzio*, 37 Ohio App.3d at 165, 524 N.E.2d at 917–918; *Cellar Lumber Co. v. Holley* (1967), 9 Ohio App.2d 288, 38 O.O.2d 341, 224 N.E.2d 360. Appellant's second assignment is without merit.

█ In the third assignment, appellant claims that the trial court erred by holding that it had subject matter jurisdiction over this matter because appellees had no standing to contest the validity of the transfer at issue. This contention is without merit.[6]

Appellant urges, again while claiming to be an innocent purchaser, that appellees lacked standing to contest the validity of the transfer from Amerind and appellant. However, this contention misses the whole point of the Fraudulent Transfer Act, which gives a creditor the opportunity to void transfers

---

6. In their argument, appellees have cited the syllabus in several appellate cases. We would point out to counsel that pursuant to S.Ct.R.Rep.Op. 2(F), "[t]he syllabus of a Court of Appeals opinion *shall not* be considered the controlling statement of either the point or points of law decided, or law of the case, but rather as a summary for the convenience of the public and the Bar as a research and indexing aid." (Emphasis added.)

designed to defraud. We do not perceive how appellees lack standing to litigate the propriety of a transfer under the Act. Indeed, to adopt appellant's position would geld the Fraudulent Transfer Act and permit parties to conceal assets and shield them from collection by creditors by conveying the property to others, even if they participated in the fraud. The Act was specifically designed to allow creditors to sue to prevent successful fraudulent transfers. Clearly, appellees have standing to utilize the provisions of the Act. This position was enunciated by the Supreme Court of Ohio in *Stein v. Brown* (1985), 18 Ohio St.3d 305, 18 OBR 352, 480 N.E.2d 1121, paragraph one of the syllabus, which reads:

"An individual possessing a cause of action in tort is a 'creditor' within the meaning of R.C. 1336.01(C) and has the right to question an alleged fraudulent conveyance."

Thus, appellees had the standing to question this conveyance pursuant to R.C. Chapter 1336. Appellant's third assignment is without merit.

■ In the fourth assignment, appellant contends that the trial court erred when it did not dismiss appellees' claim under the principle of *res judicata*.

However, this issue has not been preserved for appellate purposes for two reasons. First, as noted by appellees, this defense was not raised in the answer as required by Civ.R. 8(C). The Supreme Court of Ohio has stated:

"While the word 'shall' [in Civ.R. 8] indicates the firmness of this pleading requirement, Civ.R. 8 does not state a time period within which an affirmative defense must be pleaded or the effect of failing to plead an affirmative defense. However, it is clear that some sort of concept of 'waiver' is embodied in the requirement of Civ.R. 8(C) that a party 'shall' raise any affirmative defenses in his answer.

" * * *

"Civ.R. 15(A) tells the litigant how and when to amend 'pleadings' and must be read in conjunction with Civ.R. 8(C)." *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 3–4, 12 OBR 1, 3, 465 N.E.2d 377, 379.

While appellant filed and was granted a motion to conform the pleadings to the evidence, *nowhere* in the record can any argument be found regarding *res judicata*, with a notable exception in a May 19, 1995 submission from appellant, in which appellant succinctly explained to the court (1) how appellant was not a party in the RICO action, (2) the issue regarding this fraudulent conveyance was not litigated in the RICO case, and (3) "there is absolutely no evidence that [appellant] was a party to, or in privity with [the RICO defendants], nor was any evidence presented in that proceeding supporting the same and there was no *bona fide* purchaser issue in the [RICO] proceeding[.]"

Secondly, had this issue been raised in accordance with Civ.R. 8, this error would remain waived because appellant did not raise this issue in an objection to the magistrate's report. As Civ.R. 53(E)(3)(b) states, "A party shall not assign as error on appeal the court's adoption of any * * * conclusion of law unless the party has objected to that * * * conclusion under this rule." Appellant's fourth assignment is without merit.

In the fifth assignment, appellant contends that the decision in this case was against the manifest weight of the evidence. This assignment will be reviewed using the abuse of discretion and credibility assessment standards as explained in the second assignment. See *Bechtol; Seasons Coal Co.*

Appellant asserts that because *some* testimony from witnesses called in its behalf contradicted the magistrate's/court's findings, the decision was against the manifest weight of the evidence. This contention is completely unpersuasive. Viewed in a vacuum, these portions of the testimony elicited at trial do support appellant's position. However, this court is obliged to view the entirety of the transcript to determine whether a manifest miscarriage of justice has occurred. See *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 45–46, 560 N.E.2d 765, 768–770; *Seasons Coal Co.*

Evidence was produced that supports the only two findings of importance in this case: (1) that the conveyance rendered Amerind insolvent, and (2) that the obligation was incurred without fair compensation. R.C. 1336.04 (pre–1990).[7] Additionally, evidence was presented that supports the conclusion that the Amerind-to-appellant transaction was part of the broader scheme to defraud creditors. The pattern of potentially forged signatures, lack of documentation, and other infirmities in this transaction support the findings below. *Seasons Coal Co.* Indeed, although not relied upon by the trial court, appellant's deed was invalid for its failure to have the appropriate number of witness signatures, and the defect was not cured until well after this action was filed and the judgment lien was placed on the property.

In this assignment, appellant takes fragments of the transcript and concludes that the existence of that testimony, alone, warrants a ruling in its favor. However, as the trial court is in a better position to view witnesses and the evidence, it is left to it to assess credibility and assign weight to the respective testimony by the witnesses. *Bechtol*, 49 Ohio St.3d at 23, 550 N.E.2d at 180–181; *State v. Mills* (1992), 62 Ohio St.3d 357, 368, 582 N.E.2d 972, 983. Simply because a witness called in behalf of appellant testified favorably does not delete

---

7. As was the case below, much of appellant's argument concerns its intent in the *bona fide* purchaser analysis that is irrelevant in this case. See *McCloud*, 90 Ohio App.3d at 199, 628 N.E.2d at 133.

from consideration the evidence opposite to that position submitted by other witnesses. Of particular interest was the evidence from several of the witnesses called by both sides that the prior owners remained in possession and control of the property until just weeks before the trial, which demonstrated the potential fraud in this conveyance.

As we do not perceive an abuse of discretion, the decision of the trial court was not against the manifest weight of the evidence. Appellant's fifth assignment is without merit.

For the foregoing reasons, appellant's assignments of error are without merit. The decision of the Portage County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CHRISTLEY and JOSEPH E. MAHONEY, JJ., concur.