**INTERCEPT SECURITY CORPORATION,**
Plaintiff,

v.

**CODE–ALARM, INC. and Rand Mueller, Defendants.**

Civil Action No. 95–40239.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 17, 1996.

Bruce A. Truex, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, John G. Chupa, Code Alarm, Inc., Madison Heights, MI, for Rand Mueller.

Kevin J. Heinl, Brooks & Kushman, Southfield, MI, for Intercept Sec. Corp.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS, HOLD DEFENDANT IN CONTEMPT OF COURT, AND AWARD SANCTIONS

GADOLA, District Judge.

Plaintiff, Intercept Security Corporation ("Intercept"), a Canadian Corporation, brought this suit against defendants, Code–Alarm Inc. ("Code–Alarm"), a Michigan Corporation, and its President, Rand Mueller. Intercept alleges that Code–Alarm sold to Intercept defective "key fob" controlled wireless residential and commercial alarm systems. Since the inception of this case, the parties' attorneys have been excessively and brutally at odds with one another. Discovery in this case has evolved into a foolish barrage, evidenced by the score of motions that counsel for both Intercept and Code–Alarm have filed to date, accusing one another of "stone-walling." [1]

Adding to the litany of discovery motions is Intercept's present motion [2] to: (1) compel further production of documents; (2) award Intercept all costs and fees associated with seeking this motion; (3) order that Code–Alarm be precluded from using or referring to any non-privileged document which is not produced forthwith and which falls within the scope of Intercept's document requests; (4) dismiss Code–Alarm's counter-claims with prejudice; and; (5) hold Code–Alarm in contempt of this court's May 7, 1996 order. [3] For the following reasons, this court will grant in part, and deny in part, Intercept's motion.

### I. SUMMARY

On August 22, 1994, Intercept served Code–Alarm with twenty-four requests for production of documents, including eight requests for documents relating to defects, problems, and complaints regarding Code–Alarm's home security systems for all Code–Alarm's customers and two requests for doc-

1. Intercept has filed the following discovery motions: (1) March 26, 1996 motion to compel depositions; (2) April 1, 1996 motion to compel production of documents; (3) June 12, 1996 motion to compel production of documents. Code–Alarm and Rand Mueller have filed the following discovery motions: (1) April 24, 1996 motion by Code–Alarm and Rand Mueller to compel production of recorded statements; (2) April 24, 1996 motion by Code–Alarm and Rand Mueller for protective order; (3) May 17, 1996 motion by Rand Mueller for a protective order; (4) May 31, 1996 emergency motion by Rand Mueller for a protective order; (5) June 19, 1996 motion by Rand Mueller to compel answers to interrogato-

ries; (6) June 25, 1996 motion by Rand–Mueller to compel depositions of plaintiff's expert.

2. Intercept's present motion is directed against Code–Alarm, but not Rand–Mueller in his individual capacity. Therefore, Intercept's present motion implicates Rand Mueller, only insofar as he is the President of Code–Alarm.

3. Intercept also filed a Rule 11 motion on August 22, 1996. At oral argument on October 9, 1996, this court decided to defer ruling on that motion until after the extended deadline for dispositive motions on October 21, 1996.

uments referring to modifications of Code–Alarm's home security system. After first objecting, defense counsel indicated a willingness to comply with the request. On October 23, 1995, Code–Alarm partially complied, but failed to produce a number of relevant documents.

For instance, Code–Alarm did not tender even one document evidencing complaints with other customers. Rather, Code–Alarm limited its production to records evidencing complaints Intercept made to Code–Alarm. In particular, Code–Alarm failed to furnish any "Return Authorization/Repair Order" forms ("RA forms") that documented returns by *other customers*.[4] Rather, Code–Alarm exclusively tendered RA forms documenting *Intercept* returns.

Code–Alarm's production was deficient in other respects. For example, Code–Alarm produced a mere three pages of a log entitled "Updates and Changes." This log records the form numbers for two forms: "Updates and Changes" forms[5] and "Engineering Change Order" reports[6] ("EO reports"). As for the Updates and Changes forms and EO reports which are tracked in the Updates and Changes log, Code–Alarm has not produced any of these forms either.

On April 1, 1996, Intercept, in pursuit of additional documents, filed a motion to compel further production. The motion was duly granted, and this court ordered Code–Alarm to produce all non-privileged requested documents within 30 days. The court further ordered Code–Alarm to pay Intercept up to $1,000.00 for costs and attorneys' fees. To date, Code–Alarm has meagerly responded to this court's order compelling production of

documents. Moreover, Code–Alarm has blatantly disregarded this court's order to pay the monetary sanction.

## II. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 37 and 28 U.S.C. § 1927, Intercept requests that this court order Code–Alarm to further produce documents, hold Code–Alarm in contempt, and sanction Code–Alarm. Intercept requests that this court sanction Code–Alarm by precluding Code–Alarm from introducing any new documents at trial, dismissing Code–Alarm's counterclaims, and awarding Intercept all costs and fees associated with seeking such documents.[7]

First, Intercept contends that Code–Alarm is intentionally withholding documents. Intercept claims that third parties have provided Intercept with documents that clearly fall within the confines of Intercept's original document request to Code–Alarm, which Code–Alarm has not produced. Intercept also asserts that Code–Alarm is destroying documents. Intercept points to deposition testimony of a former Code–Alarm senior RF Engineer, David Scruggs, who stated that records of another project engineer mysteriously disappeared one day from a Code–Alarm office. Additionally, Intercept maintains that Code–Alarm, in general, and Janet Slagle,[8] in particular, conducted an improper search. According to Intercept, Slagle contacted a mere five individuals in her endeavor to gather documents, and failed to approach key Code–Alarm employees for this purpose. Also, Slagle is seemingly unaware of any document control department institut-

---

**4.** An RA form is completed by Code–Alarm with each customer return, listing the date of the return, comments of the return, models of product returned, and quantities returned. The form number is then logged into a Return Authorization log.

**5.** "Updates and Changes" forms list a serial number, a change Code–Alarm made to that serial number (e.g. change in resistors or circuit boards) and the date of such change.

**6.** EO reports detail the problems that were encountered with products and the proposed solutions to the same.

**7.** Code–Alarm filed thirteen counter-claims on December 4, 1996, alleging breach of duty of good-faith and fair dealing, tortious interference with actual and prospective business relations, slander *per se*, unfair competition, interference with prospective business advantage, trade disparagement and trade libel, fraud, misrepresentation, restraint of trade, breach of fiduciary duty, accounts stated, breach of contract, and innocent misrepresentation.

**8.** Supposedly, Janet Slagle is a paralegal who is primarily in charge of locating documents for this litigation.

ed at Code–Alarm, and therefore, has not searched such a department.[9] Lastly, Intercept argues that Slagle has confined her search to "dead storage" areas, overlooking locations such as Vice–President of Engineering, Peter Stouffer's two homes [10] and his personal storage facility in Dearborn, Michigan.[11]

In its defense, Code–Alarm maintains that "thousands of documents" have been produced, boldly professes that "[a]bsolutely no documents have been damaged, hidden, destroyed or withheld on account of the instant lawsuit," and avers that *all* feasible locations have been probed.[12] Code–Alarm explains that documents which have not yet been provided were either damaged or destroyed during the physical relocation of the home security department in early 1993, or that integral ex-employees of Code–Alarm "were in possession of many documents." [13] Furthermore, Code–Alarm insists that Intercept's request for production is ambiguous. Code–Alarm argues that Intercept's request for relevant documents is unreasonably broad and Intercept has not specifically identified any document(s) being withheld. In any event, Code–Alarm asserts, even assuming arguendo that Code–Alarm has not produced relevant documents, nevertheless Intercept's request for dismissal of Code–Alarm's counter-claims is inappropriate because Intercept has not introduced a scintilla of evidence suggesting "foul play" on the part of Code–Alarm. In turn, Code–Alarm argues that Intercept's motion for sanctions is, in itself, sanctionable.

### a. Federal Rule of Civil Procedure 37(b)

Federal Rule of Civil Procedure 37(b) discusses the ramifications of failing to comply with a court discovery order, such as this court's May 7, 1996 order compelling Code–Alarm to produce documents. Rule 37(b)(2) delineates à wide array of sanctions which a court may impose for such failure, including an order prohibiting the disobedient party from introducing designated matters into evidence, an order striking out pleadings, and an order holding the recalcitrant party in contempt. The court has broad discretion to order one or more "just" sanctions as provided for in Rule 37, and thus, can tailor the imposition of sanctions to the facts of a particular case. Fed.R.Civ.P. 37(b)(2); *Regional Refuse Systems v. Inland Reclamation Co.*, 842 F.2d 150, 153 (6th Cir.1988); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329–30 (8th Cir.1986) (cited in *Baker v. General Motors Corp.*, 159 F.R.D. 519 (W.D.Mo. 1994)); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice & Procedure* § 2289 (2d ed. 1994).

■ In fact, Rule 37(b) provides for the draconian sanction of dismissal when a party's failure to comply with an order of a court is attributable to "willfulness, bad faith, or any fault" of the party. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); *Regional Refuse Systems*, 842 F.2d at 153; *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir.1995) (defining "willful violation" as "conscious and intentional failure to comply with the court order"). "The use of dismissal as a sanction for failing to comply with discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar

---

**9.** Code–Alarm's Production Manager, Alberta Miller, testified that a document control department was organized in November, 1995.

**10.** Stouffer has a home in Clarkston, Michigan and Paris, France.

**11.** At his deposition on June 6, 1996, Stouffer testified that documents could be stored at Code–Alarm's corporate headquarters and annex in Detroit, or Stouffer's homes in Clarkston, Michigan and Paris, France, or a storage facility in Dearborn, Michigan or Code–Alarm's facilities in Austin, Texas and Paris, France.

**12.** Code–Alarm submitted the affidavits of Stouffer and Engineering Manager, John Gillespie, stating that they have searched for documents at all locations and facilities.

**13.** Code–Alarm does not elaborate on why integral employees who are no longer employed by Code–Alarm are responsible for any loss, damage or destruction of documents. Presumably, Code–Alarm is arguing that ex-employees took the documents with them upon their departure, or hid or destroyed them prior to parting with Code–Alarm.

litigants from such misconduct." *Bass,* 71 F.3d at 241 (citation omitted).

■ The burden is on the noncomplying party to show that the failure was due to inability and not to willfulness, bad faith, or fault. *Regional Refuse Systems,* 842 F.2d at 154. The rationale behind this presumption is that, "if a party has the ability to comply with a discovery order and does not, dismissal is not an abuse of discretion." *Id.* (citing *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976)).

■ In addition to whether non-cooperation with a discovery order is willful, the Sixth Circuit has identified three other factors a court should consider when deciding whether dismissal is warranted. The three factors are: (1) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (2) whether the non-compliant party was warned of the possibility of dismissal, and; (3) whether less drastic sanctions should be imposed. *Bass,* 71 F.3d at 241; *Regional Refuse Systems,* 842 F.2d at 155; *Bank One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1073 (6th Cir.1990).

### b. Whether Code–Alarm Should be Compelled to Further Produce Documents

■ This court finds that for over one year, Code–Alarm has flagrantly avoided Intercept's document requests. Intercept originally served Code–Alarm with straight-forward and reasonable document requests in August, 1995. Discussions between Code–Alarm and Intercept regarding perceived deficiencies in Code–Alarm's document production have been entirely fruitless. Indeed, even this court's order has not resolved the long-standing document discovery dispute because Intercept is presently before this court requesting the exact same documents (e.g. RA forms, EO reports) it requested six months ago.

The justifications Code–Alarm has provided this court for its non-compliance are untenable. First, Code–Alarm argues that documents were lost during the relocation of the home security department. While this may be true for documents dated prior to 1993, this does not explain Code–Alarm's failure to produce any RA forms from other customers dated late–1993 or 1995 and only four such forms dated 1994.[14] Also, this excuse seems dubious in light of the fact that the majority of RA forms for other customers that Code–Alarm produced (33 out of a total of 41 such forms) are dated 1992, *prior* to the move. Moreover, the move does not justify Code–Alarm's total failure to produce EO reports and other pages from the "Updates and Changes" log.

Code–Alarm's argument that employees who left the company are responsible for Code–Alarm's failure to produce documents is equally unavailing. Code–Alarm does not expound on this justification. Why are Code–Alarm's ex-employees responsible for such a tremendous loss of documents? This court finds it incredible that Code–Alarm would allow key employees to depart with important documents, or that every employee hid, lost or destroyed documents before he or she left. Moreover, Code–Alarm does not provide the name of even one so-called "integral" former employee who was in possession of the documents at issue.

For all the foregoing reasons, this court has arrived at the inescapable conclusion that Code–Alarm is withholding documents from Intercept. This court's conclusion is bolstered by the fact that Code–Alarm, in the past, has denied the existence of documents and then later was able to produce a smattering of them. Indeed, the overwhelming evidence is contrary to Code–Alarm's averment that all locations were searched and all documents have been produced.

■ This court also finds Intercept's document requests to be clear. At the very least, Intercept seeks the following documents: (1) RA forms for other customers dated 1993–1995; (2) EO reports dated 1992–1995; and (3) pages from the Updates and Changes log.

---

**14.** Code–Alarm has produced 33 RA forms dated 1992 from other customers, four RA forms dated 1994 from other customers and no RA forms dated late–1993 or 1995 for other customers.

Accordingly, Code–Alarm shall search [15] files and records of all employees who could be in possession of the requested documents, and produce such documents within 20 days. Code–Alarm shall be precluded from introducing *any* new document which has not been produced to Intercept prior to or pursuant to this order, which falls within Intercept's document requests.

■ Under the circumstances, sanctions are warranted. Code–Alarm is ordered to pay costs of this motion, including reasonable attorney's fees, in the amount of $2000.00.

### c. Whether Code–Alarm's Counter-Claims Should be Dismissed

■ Intercept argues that Code–Alarm's counter-claims should be dismissed as a sanction for Code–Alarm's failure to produce documents. As aforementioned, in determining whether a recalcitrant party's claims should be dismissed under Federal Rule of Civil Procedure 37(b), the court must consider four factors: (1) the willfulness of the disobedient party; (2) the prejudice to the adversary; (3) whether the non-compliant party was warned; and (4) whether less drastic sanctions should be imposed. *Bass,* 71 F.3d at 241. Each factor will be discussed in turn.

This court finds Code–Alarm's failure to produce various documents willful. Code–Alarm has had more than ample time to respond to the requests, but has scantily complied. Code–Alarm's excuses for non-compliance are untenable and Code–Alarm's assertion that the documents are missing, damaged or ·destroyed is highly dubious. The justifications Code–Alarm has provided do not rebut the presumption that their non-compliance is willful.

It is undeniable that Intercept is being prejudiced by this failure to cooperate in discovery. While it is true that the information is necessary for Intercept to prepare its case against Code–Alarm, it is equally true that much of the requested material is relevant to the merits of Code–Alarm's compulsory counter-claims (e.g. interference with business relations, slander *per se,* and misrepresentation). Particularly, Intercept needs this information to properly understand the nature and extent of Code–Alarm's counter-claims and to be able to prepare a defense or enter settlement negotiations. In short, Intercept is entitled to much of the information requested and needs that information to prepare an informed defense in a timely manner.

With regard to the third factor, Code–Alarm has not been warned by this court that failure to comply with its discovery order could result in dismissal of the case. Code–Alarm partially responded to this court's order, but the order itself does not mention any sanctions for failure to comply. Certainly, the federal rules permit this court' to dismiss for failure to comply. This court, however, has not given any explicit notice to Code–Alarm. This factor counsels against ·dismissal at this time.

As for the fourth factor, this court finds that it is inappropriate, at this time, to dismiss Code–Alarm's thirteen counter-claims to force Code–Alarm to comply with Intercept's document requests. Less severe sanctions are warranted (e.g. Code–Alarm, at the very least, must pay the costs Intercept incurred in bringing this motion). This court is generously affording Code–Alarm one final opportunity to produce the requested documents. To be sure, if Code–Alarm refuses to comply with this order, this court will unhesitantly dismiss all of Code–Alarm's counter-claims against Intercept with prejudice. Thus, this order serves as an admonition to Code–Alarm that failure to comply with this court's order will result in dismissal of its action against Intercept.

### d. Whether Code–Alarm Should be Held in Contempt for Failing to Pay Intercept $1000

■ Intercept argues that Code–Alarm is in contempt of this court's May 7, 1996 order. Intercept contends that Code–Alarm refused to pay Intercept's costs, as the order directed. The order reads in relevant part:

---

**15.** This court's order to search all possible locations where the requested documents could be contained includes an order to research various locations in an effort to obtain the requested documents.

Plaintiff has made a good faith effort to obtain this discovery prior to filing the [April 1, 1996] motion. Plaintiff shall notify defendants and the court of the appropriate costs within ten days of this order. Defendant Code–Alarm shall pay the amount owed, *not to exceed $1,000*, to plaintiff within ten days of being notified of the precise amount owed. *If such payment is not timely made, plaintiff shall notify this court and defendant Code–Alarm will be held in contempt of court, with appropriate sanctions.*

(emphasis added).

On May 17, 1996, Intercept notified this court and Code–Alarm that its costs amounted to $1,398.00. Therefore, Code–Alarm was to pay Intercept $1,000.00 within ten days of such notification. Code–Alarm refused to pay $1000.00 to Intercept, choosing instead to construe imaginatively this court's order. In particular, Code–Alarm read into the order the ability to assess the reasonableness of the costs on its own, and pay an amount it, alone, determined to be reasonable. Certainly, the language of the order clearly provides for *no* such independent assessment by Code–Alarm. Quite the contrary, the court had already determined that sanctions in any amount up to, and including $1000.00 on the nose, to be reasonable and warranted.

■ Accordingly, this court finds Code–Alarm in contempt of the May 7, 1996 order to pay Intercept's costs of bringing the April 1, 1996 motion. Code–Alarm shall pay Intercept $1000.00, plus interest from the date of June 1, 1996 at the federal pre-judgment interest rate. Also, as Code–Alarm's conduct has caused substantial and unnecessary burdens to be visited upon this court, this court will order that Code–Alarm pay into the Clerk of this court, within ten days of this Order, the sum of two-hundred and fifty dollars ($250.00) as a sanction for its contempt. The factors that have guided this court in determining the appropriate amount for Code–Alarm's contumacious conduct in this case are the following: (1) the conduct was deliberately performed; (2) the conduct has caused a completely unnecessary burden upon the time and resources of this court; (3) there is a need to deter Code–Alarm, and other litigants and counsel from similarly obstructive conduct, and (4) the sanction avoids undue punishment.

### e. Code–Alarm's Failure to Pay Michael Macdonald's Plane Fare

■ This court deems it necessary to address one other matter that has been the source of significant dissension among the parties in this case. On June 5, 1996, this court ordered Code–Alarm to pay the airfare for Intercept's President, Michael Macdonald, to enable him to attend the deposition of Code–Alarm's President, Rand Mueller. Apparently, Macdonald used a flight coupon, and thus, Code–Alarm argued it did not have to pay Macdonald. Although Code–Alarm's construction of the June 5, 1996 order is not wholly irrational, this court construes the order as requiring Code–Alarm to pay Macdonald the reasonable value of his flight in the event he used a flight coupon. Thus, the court orders Intercept to submit and Code–Alarm to pay the reasonable value of airfare, assuming two weeks advance notice.

### III. CIVILITY OF COUNSEL

Although this order reprimands and sanctions Code–Alarm for its inexcusable delay in producing the requested documents and refusal to pay court-ordered sanctions, it is clear to this court that Intercept, at times, has been equally defiant of Code–Alarm's requests. Counsel have persisted in a course of interminable bickering and have shown one another a complete lack of courtesy. Undeniably, the reputation of the legal professional suffers when counsel behave in this impeding fashion. Moreover, counsels' continual and repetitious resort to this court to resolve petty disputes is thwarting this court's effort at achieving an efficient administration of justice. Counsels' attention was directed to the Eastern District of Michigan Civility Principles at the October 9, 1996 hearing on this matter. For the benefit of all, this court has attached a copy of the Civility Principles which should be thoroughly examined. Hereinafter, this court expects counsel to act in accordance therewith.

## ORDER

IT IS HEREBY ORDERED that Code–Alarm search files and records of all employees who could be in possession of the requested documents, and produce such documents within 20 days.

IT IS FURTHER ORDERED that Code–Alarm shall be precluded from introducing any new document which has not been produced to Intercept prior to or pursuant to this order, which falls within Intercept's document requests.

IT IS FURTHER ORDERED that Code–Alarm shall pay the costs of this motion, including reasonable attorney's fees, in the amount of $2000.00. Code–Alarm shall pay the amount owed, $2,000.00, to Intercept within ten days.

IT IS FURTHER ORDERED that Code–Alarm pay Intercept $1000.00 within ten days of this order, plus interest at the federal prejudgment rate from the date June 1, 1996.

IT IS FURTHER ORDERED that Code–Alarm shall pay the Clerk of the Court $250.00 within 10 days of this order.

IT IS FURTHER ORDERED that Code–Alarm pay an amount comparable to the reasonable airfare for Michael Macdonald's flight, assuming two weeks advanced notice.

IT IS FURTHER ORDERED that the period for dispositive motions has been extended until Monday, October 21, 1996 and this court's ruling on Intercept's Rule 11 motion be deferred until that time.

**SO ORDERED.**