NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0152n.06
Filed: March 17, 2008

Nos. 07-5097/5387

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| GRANGE MUTUAL CASUALTY COMPANY, GRANGE INDEMNITY INSURANCE COMPANY, and TRUSTGUARD INSURANCE COMPANY, <br><br> Plaintiffs-Appellees, <br><br> ALLSTATE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, THE FIRST LIBERTY INSURANCE CORPORATION, LM INSURANCE CORPORATION, INDIANA INSURANCE COMPANY, and EMPLOYEES INSURANCE COMPANY OF WAUSAU, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> GREG S. MACK, <br><br> Defendant-Appellant. | On Appeal from the United States District Court for the Eastern District of Kentucky |

Before:    BOGGS, Chief Judge; BATCHELDER and GRIFFIN; Circuit Judges.

PER CURIAM.  Defendant Greg Mack appeals a default judgment and subsequent default

award of damages entered in favor of a group of insurance companies (the "Grange plaintiffs").[1]

---

[1] The Grange plaintiffs sued Mack in Case No. 07-5097.  A second set of insurance plaintiffs, led by Allstate, sued Mack in Case No. 07-5387.  The cases have been consolidated for appeal.  The issues in the two cases are identical, and we refer to all plaintiffs collectively as Grange or the Grange plaintiffs.

Mack bilked the companies by setting up medical clinics to treat auto accident victims and then using those clinics to diagnose phony injuries and overcharge the companies for the needless medical services performed. The Grange plaintiffs discovered the scheme and sued for fraud and RICO violations in December 2002. In November 2004, District Judge Joseph M. Hood warned Mack that if he continued obstructing discovery, the case would be tried on damages alone. Mack continued his obstruction, and the judge issued a default judgment as to liability in October 2005. Mack then continued obstructing the Grange plaintiffs' damages investigations, so the district court issued a default judgment as to damages in December 2006. Mack appeals, arguing that the judge abused his discretion in issuing the default judgment. We affirm without hesitation, and hold that Judge Hood acted well within the discretion given to him by Federal Rule of Civil Procedure 37(b)(2)(C).

I

Greg Mack operated multiple medical treatment clinics for car accident victims in eastern and central Kentucky. The Grange plaintiffs accused Mack's clinics of double-billing, illegal fee-splitting, diagnosing fake injuries, and performing excessive and unneeded medical treatment. The Grange plaintiffs sued Mack and several corporations he controlled (collectively "Mack" or "the IRC defendants") under RICO, based on a conspiracy to submit fraudulent health care bills using the United States mail. Mack filed an answer denying the allegations.

Discovery began in October 2003. The district court ordered all mandatory Rule 26 disclosures to be completed before December 12, 2003, and all discovery to be finished by September 30, 2004. Although the Grange plaintiffs complied with the Rule 26 deadline, the IRC defendants delayed their Rule 26 disclosures until February 27, 2004, and their "production"

included no documents. The discovery process went downhill from there. Grange asked for a status conference to discuss discovery issues in October 2004. The district court held the conference on November 15, 2004, and during this conference, it explicitly warned the IRC defendants that continued discovery abuse would result in a default judgment. Despite this conference, the Grange plaintiffs were forced to file motions to compel on December 9, 2004, and December 14, 2004. The motions were granted in part on February 8, 2005.

Litigation continued, and after two more status conferences, the Grange plaintiffs filed another motion to compel and a motion for sanctions. The district court held a hearing on October 17, 2005, and at the hearing, it struck Mack's answers and ordered the trial to proceed on damages only. This result did not appear to faze Mack: In the fourteen months following the default judgment on liability, Grange filed, and the district court granted, four more motions to compel. Mack defied them all. After the plaintiffs filed their fourth motion, the district court ordered Mack to comply or risk being held in contempt. He did not comply. Finally, on December 13, 2006, the district court entered a default judgment against Mack and his alter-ego corporations in favor of the Grange plaintiffs for $3,430,983.69, plus costs and attorneys' fees.[2] Mack appealed.

II

Judge Hood issued the default judgment because of Mack's "willful, prejudicial, and repeated obstruction" of discovery and Mack's "repeated disregard of the Court's orders." An abbreviated summary of the three-volume record confirms Judge Hood's analysis of the situation.

---

[2] On February 14, 2007, the district court entered a default judgment against Mack and his corporations in favor of the Allstate plaintiffs for approximately $5.4 million.

Mack tried to block the Grange plaintiffs' attempts to take discovery from Dr. Viviente Santelices. Mack's (belated) Rule 26 disclosures identified Dr. Santelices as an employee of one of Mack's clinics, so the Grange plaintiffs subpoenaed Santelices and ordered him to bring certain documents to his September 23, 2003, deposition. Dr. Santelices appeared, but out of the 42 documents requested, he brought only his medical licence and curriculum vitae. When Grange's counsel asked about the other documents, Dr. Santelices said that he had shown the subpoena to Mack, and that Mack had instructed Santelices not to produce the other documents. Judge Hood found no legitimate basis to withhold any of the documents that Mack told Santelices to withhold.

During the deposition, the Grange plaintiffs learned that Dr. Santelices kept a date book with his daily schedule for treating patients. They asked for the book, and Dr. Santelices agreed to produce it. But when Grange finally received a copy of the book, most of its pages were missing. Grange contacted Dr. Santelices about the missing pages, and Santelices then gave Grange a complete copy of the book. Mack learned that Dr. Santelices had turned over a complete copy of the book, and immediately fired him.

On August 16, 2004, the Grange plaintiffs subpoenaed the files of Robert Riley, after he had withdrawn as counsel for Mack. Riley asked for a protective order, arguing that the files were privileged. The court responded that Riley's request "won't fly" because Riley worked as part of Mack's organization and not as separate counsel. The parties then agreed that production would occur at Riley's suburban Louisville office on October 11, 2004.

On the morning of October 11, Mack's acting counsel tried to move production to counsel's downtown offices. Grange's counsel refused, and production was held at Riley's office. Three

categories of documents were produced. Riley produced his original files in two boxes, while Mack's counsel produced copies labeled RWR-0001—RWR-02700 in one box and copies labeled RWR-GM-0001—RWR-GM-02350 in another box. Mack's attorneys claimed that the boxes they produced contained complete copies of Riley's original file, but the Grange plaintiffs soon discovered that documents were missing from the "RWR" copies Mack had produced, but were available in Riley's original files.[3] Riley admitted in a later deposition that files had been removed from the "RWR" series. After discovering the discrepancy, the Grange plaintiffs sent Mack a letter requesting a log of all missing documents and an interrogatory demanding the identity of all persons who handled the "production" of the "RWR" and "RWR-GM." files. Mack ignored both. The Grange plaintiffs and Judge Hood suspected that Mack attempted to move discovery away from Riley's office in order to hide the improper removal of documents.

The Grange plaintiffs fared no better in their written discovery attempts. They filed written discovery requests on September 16, 2004, and on September 21, 2004, but the requests were simply ignored. At a status hearing on November 15, 2004, the Grange plaintiffs told the district court about the ignored requests and about the episodes involving Riley and Dr. Santelices. The court gave this warning:

> In these Rules, in Rule 26, are pretty serious admonitions, and I take them to be law.
>
> And I enforce them, and I don't cotton to people playing games with my discovery rules.

---

[3] Missing documents included records of large cash withdrawals that were not reported to the IRS, records surrounding the suspension of Dr. DiBenetto's medical licence, and records indicating that Mack was billing for the services of non-physicians as if they were physicians.

> Now someone's messed with this discovery. I am not blaming anyone.
>
> I am just saying, there's nothing worse than a federal judge who thinks the discovery process is being screwed around with.
>
> Now, you tell your clients that if they are screwing around with my discovery process, I have a solution to their problem. The solution is striking answers and trying matters on damages only. I mean it.
>
> . . .
>
> But you tell your clients that if they want me to try this on the issue of damages, I am perfectly capable of doing that. All right?

Despite this blunt warning, Mack produced nothing, so the Grange plaintiffs filed yet another motion to compel. Shortly before his response was due, Mack said that all documents were available for review at a storage unit in Heathrow, Florida.

When the Grange plaintiffs arrived at the storage facility on March 21, 2005, they discovered that many of the requested documents were missing. Personnel files described in Joni Mack's deposition[4] were not present, nor were the majority of the patient files. Furthermore, the facility contained no documents describing IRC's operations after 2001. The Grange plaintiffs complained, and were permitted to return in July to see more documents, but once again no current patient files or bank records were found.

The same pattern of abuse and obstruction occurred with respect to electronic discovery. The district court entered the Parties' Agreed Order regarding electronic discovery in January 2004. The

---

[4] Joni Mack is Greg Mack's wife. She testified that these files existed even though Mack's counsel sent multiple letters claiming that they did not.

Agreed Order required Mack to identify *all* computers used in the course of his business and to have a third party copy the hard drives. Once copied, he was to list *all* files on the copied drives, and then identify the *specific* drive, file name, file date, and description of the information in the file and then identify the *specific* basis for the objection for *every* file which he refused to produce. In July 2004, he provided a short list of patient files that he was willing to make available, and then, in direct defiance of the Agreed Order, gave a general objection that "any other file . . . is not relevant to these proceedings" and would not be produced.

Judge Hood found that on October 15, 2005, almost *two years* after the entry of the Parties' Agreed Order, Mack (and his alter-ego corporations) had "still not identified all computers used in the course of their business." Mack's wife admitted in her deposition that, despite pending litigation, Mack had replaced the company computers in August and September 2003. Mack refused to produce his home computer, even though he admitted that it had been used for business purposes, and likewise refused to produce a computer that had been used by Larry Lammers, a former IRC employee then in jail for practicing medicine without a license. The Grange plaintiffs' discovery of a paper copy of an e-mail sent by Margaret Gowse, a former IRC consultant, for which no electronic version has ever been found, further suggested that Mack did not turn over all electronic evidence.

Finally, on July 13, 2005, the Grange plaintiffs deposed Belinda Stratton, Mack's office manager. Stratton testified to the existence of at least four more file cabinets containing responsive documents, including patient files, reports, and employee files, which had not been turned over to Grange. She also indicated that several boxes of financial records were stored under her desk. Finally, she said that despite "verified" statements from Greg Mack to the contrary, neither Greg nor

Joni Mack had ever asked Stratton to gather documents for discovery. None of the documents

Stratton identified have been turned over to the Grange plaintiffs.

### III

### A

The district court issued the default judgment on liability pursuant to Fed. R. Civ. P.

37(b)(2)(B). We review a district court's orders under this rule only for an abuse of discretion.

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997).

### B

Federal Rule of Civil Procedure 37(b)(2)(C) allows district judges to sanction discovery

abusers. A district judge holds a variety of sanctions in his arsenal, the most severe of which is the

power to issue a default judgment. Fed. R. Civ. P. 37(b)(2)(B). When a district judge uses his

strongest weapon, we look to four factors to see if he abused his discretion. *Bank One of Cleveland,*

*N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). They are: 1) whether the disobedient party acted

in willful bad faith; 2) whether the opposing party suffered prejudice; 3) whether the court warned

the disobedient party that failure to cooperate could result in a default judgment; and 4) whether less

drastic sanctions were imposed or considered. *Ibid.* In this case, all four factors weigh strongly in

the Grange plaintiffs' favor, so we have no need to balance them against each other.

First, Mack's willful bad faith in thwarting discovery is so obvious that he does not bother

contesting this point. A glance at the record shows why. Although our court hesitates, but is not

entirely unwilling, to approve a default judgment when any misconduct is solely the fault of the

attorney, *Harmon*, 110 F.3d at 367–68, we need not hesitate here because Mack perpetrated the

discovery abuse himself. Mack personally instructed Dr. Santelices not to produce numerous

discoverable documents and personally fired Dr. Santelices when the doctor turned over a complete

copy of his date book instead of the edited version that Mack initially turned over. Mack personally

changed the office computers despite pending litigation, refused to turn over other computers, and

issued blanket, frivolous objections to the Grange plaintiffs' discovery requests. Prior courts have

treated similar frivolous objections as evidence of willful conduct. *Bank One*, 916 F.2d at 1074–75.

Furthermore, Mack's former counsel, Robert Riley, admitted that important documents had been

removed from his files. Documents do not jump out of file boxes on their own.

Second, the Grange plaintiffs were prejudiced because they never received information

critical to their case and because they had to waste significant time and money dealing with the

defendants' abuses. Once again, Mack does not contest this point. The Grange plaintiffs never

received important personnel files, patient files, bank records, and internal correspondence. Without

this information, their ability to prepare their case was crippled. For example, without patient files

they could not prove which diagnoses were phony, and without the defendants' internal

correspondence, they could not establish the intent element in their RICO claims. Inability to secure

critical information can constitute prejudice. *Harmon*, 110 F.3d at 368.

The defendants' obstructionism also cost the Grange plaintiffs time and money. As Judge

Hood put it:

> Plaintiffs have been forced to turn to the Court time and time again to enforce
> compliance with the basic obligations of discovery, at a great cost in time and
> expense. In some cases, as with the computer privilege log and the document
> requests in September, 2004, plaintiffs have had to obtain not one, but two, orders

> from the court to secure compliance, as the IRC defendants have simply ignored the Court's first orders.

The obstruction continued for over two years. Courts have previously found prejudice sufficient to uphold default judgments when the obstructing party had wasted far less of the court's and the opposing litigant's time. *See Harmon*, 110 F.3d at 368 (discovery requests ignored for less than a year); *Wanderer v. Johnston*, 910 F.2d 652, 654–55 (9th Cir. 1990) (defendants obstructed discovery for eighteen months).

Third, Mack received more than adequate warning about the possibility of a default judgment. Mack spends most of his time contesting this point, but his argument ignores the hearing on November 15, 2004, at which he was clearly warned about possible default liability. Mack's claim that the "minute entry for the conference does not reflect the fact that Mack was given any warning" is irrelevant. The official transcript of the November 15, 2004, hearing records the precise words of Judge Hood's warning:

> In these Rules, in Rule 26, are pretty serious admonitions, and I take them to be law.
>
> . . .
>
> Now, you tell your clients that if they are screwing around with my discovery process, I have a solution to their problem. The solution is striking answers and trying matters on damages only. I mean it.
>
> . . .
>
> But you tell your clients that if they want me to try this on the issue of damages, I am perfectly capable of doing that. All right?

Even Mack's former counsel admitted to receiving this warning. Mack cannot now pretend otherwise.

- 10 -

As to the fourth factor, Mack admits that there is no legal requirement for a district judge to issue lesser sanctions before entering a default judgment, but nevertheless contends that the district court should have used more "gradual" sanctions in his case. The district court offered this explanation why the "gradual" sanctions Mack wanted would not work:

> No lesser sanction would be an appropriate punishment for the IRC Defendants. An order precluding the IRC defendants from using the information not produced to support their claims or defenses would be impossible to fashion, given that no one, (except perhaps the IRC defendants themselves) knows what information has been lost. It is no punishment to the IRC defendants to forbid them from using the information that was on the lost computers or in Belinda Stratton's files.

The district court's reasoning persuades us because Mack and the IRC defendants lost or destroyed the information precisely because they did not want it to be used at all. The district court continued, saying that "an award of attorneys' fees and costs, even if the IRC defendants actually paid, would not fairly compensate Plaintiffs for the prejudice they suffered, and would do nothing to recover information that could be essential to the Plaintiffs' case at trial." Mack's suggestion that the district court should have entered a default on Grange's state law claims, leaving the RICO claims unresolved, ignores the fact that Mack's obstruction thwarted Grange's ability to prove its RICO claims, not just its state law claims. It is in cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be the appropriate sanction. *See Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988) (affirming dismissal of complaint with prejudice because plaintiffs' obstruction prevented defendants from learning "how the plaintiffs intended to prove their case").

Mack implies that the court should have been more hesitant to strike his answers given that the case was a RICO case and the combined damages topped $8 million. But courts have previously issued default judgments, or dismissed complaints with prejudice, in high-stakes civil RICO cases where a party was less obstructive than Mack. *See, e.g.*, *Harmon*, 110 F.3d at 369 (dismissing complaint in civil RICO case); *Wanderer*, 910 F.2d at 657 (affirming $25 million default judgment in civil RICO case). Finally, the fact that Mack continued to obstruct discovery with respect to damages for fourteen months after the district judge had entered a default as to liability shatters any illusion that Mack would have responded to lesser sanctions.

Mack's argument on this point is little more than a contention that the district court could have exercised its discretion differently. This is true, but irrelevant and not necessarily helpful to Mack. While Judge Hood could have imposed more limited sanctions, Judge Hood also could have exercised his discretion to end Mack's charade much sooner than he did.

C

Perhaps from an abundance of caution, the Grange plaintiffs address other issues, such as the district court's damage calculations and the district court's decision to award attorneys' fees, in their briefs. But for every argument, either Mack did not raise the issue in his briefs to us, or he did not raise the issue below, or he raised it below, and raises it now, only as a naked assertion without any supporting argument or case law. Therefore, Mack has waived these issues and we will not discuss them further. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) ("It is a well-established principle that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citations omitted); *Kusens v. Pascal Co.,*

*Inc.*, 448 F.3d 349, 368 (6th Cir. 2006) ("It is well-settled that issues not presented to the district court but raised for the first time on appeal are not properly before this court.").

IV

Our civil legal system hinges on voluntary discovery. Discovery abusers must be sanctioned, because "[w]ithout adequate sanctions, the procedures for discovery would be ineffectual." 8A Wright, Miller & Kane, *Federal Practice and Procedure* § 2281 (2d ed. 1994). Judge Hood acted well within his discretion in ordering the default judgment. We affirm, both to punish Mack for his egregious conduct and to deter other litigants who might be tempted to make a mockery of the discovery process. *See Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (per curiam). The judgment of the district court is AFFIRMED.