**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0057n.06

No. 19-3006

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| KCI USA, INC., | ) | **FILED** |
|  | ) | Jan 28, 2020 |
| **Plaintiff–Appellee,** | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| HEALTHCARE ESSENTIALS, INC. et al., | ) | COURT FOR THE NORTHERN |
|  | ) | DISTRICT OF OHIO |
| **Defendants,** | ) |  |
|  | ) |  |
|  | ) | **OPINION** |
| COLIN TENNEBAR, | ) |  |
|  | ) |  |
| **Defendant–Appellant.** | ) |  |

Before: MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Colin Tennebar flouted court orders to comply with discovery at every turn. As a result of his infractions, the district court sanctioned him with a default judgment on all counts in KCI's Third Amended Complaint and found him jointly and severally liable to KCI, along with his co-defendants, for $645,016,638.00 in monetary relief and $2,464,313.55 in attorney fees. Colin argues that was improper because his brother Ryan was in charge of the company that is the subject of this litigation—not him. But that does not excuse Colin, the sole shareholder of the defendant company and a named defendant in the case, from the consequences of obstructing discovery. We **AFFIRM** the district court's imposition of case-terminating sanctions in the form of a default judgment and its order granting damages. We **DISMISS** as untimely Colin's appeal of the district court's order granting attorney fees.

## I. BACKGROUND

KCI brought a lawsuit in 2014 against Healthcare Essentials, Inc. ("Healthcare Essentials") for the alleged unauthorized marketing and distribution of KCI Wound V.A.C.® devices to health care facilities. R. 1 (Compl. at 3, ¶ 12) (Page ID #3).[1] The V.A.C.s "deliver[] negative pressure (a vacuum) at the wound site through a patented dressing" for "effective treatment for difficult to treat chronic wounds." *Id.* at 2, ¶¶ 7–8 (Page ID #2). In its Complaint, KCI alleged that Healthcare Essentials was illegally acquiring KCI V.A.C.s and holding them out as Healthcare Essentials products. *Id.* at 3–4, ¶¶ 12, 14–20 (Page ID #3–4). KCI also alleged that Healthcare Essentials made itself a market competitor by falsely representing to healthcare facilities that it is affiliated with or a part of KCI. *Id.* at 4, ¶ 16 (Page ID #4).

Healthcare Essentials was operated by twin brothers Ryan and Colin Tennebar. Ryan ran the business as its sole member. *See* R. 70 (First Am. Compl. at 3, ¶ 7) (Page ID #1102). Colin was the sole shareholder. *See id.* at 3, ¶ 8 (Page ID #1102). It is unclear to what extent Colin participated in the day-to-day affairs of the company. However, emails show that Ryan kept Colin in the loop on Healthcare Essentials's operations, and that Colin and Ryan together met with KCI representatives to offer to sell the Healthcare Essentials V.A.C. business to KCI in 2013. R. 331 (Show Cause Hr'g Tr. at 76–83) (Page ID #5798–5805). Ryan also drafted a business summary that stated, "Healthcare Essentials is owned by both Ryan and Colin Tennebar with each having a fifty percent equity in the company. We are identical twin brothers and work together through our different partner channels to make this operation both clinically sound and financially successful."

---

[1]KCI eventually joined as defendants the various alter egos of Healthcare Essentials, Inc. *See* R. 276 (Third Am. Compl. at 1–2) (Page ID #4930–31). For simplicity, this opinion will refer to each of these entities as Healthcare Essentials, unless otherwise specified.

*Id.* at 126 (Page ID #5848) (quoting business summary). Colin claims that he owned the company only "for income tax purposes" and had no role in the business beginning in 2012. *Id.* at 21 (Page ID #5743). Ryan formed additional entities called Healthcare Essentials, LLC, Healthcare Essentials South, LLC, and RT Acquisition, Inc. *See* R. 70 (First Am. Compl. at 2) (Page ID #1101); R. 331 (Show Cause Hr'g Tr. at 20) (Page ID #5742). In 2016, during the litigation, Ryan created Healthcare Essentials Medical Devices, LLC and became its sole owner. R. 171 (Order at 1–2) (Page ID #3354–55). KCI offered evidence to the court that showed that each of the Healthcare Essentials entities "operated interchangeably." *See* R. 331 (Show Cause Hr'g Tr. at 20) (Page ID #5742).

In November 2015, KCI named Ryan and Colin as individual defendants in the lawsuit. R. 70 (First Am. Compl. at 2) (Page ID #1101). For years, the defendants resisted requests for discovery, even upon orders compelling production and under threat of sanctions. *See* R. 167 (Memorialization of Disc. at 6–8) (Page ID #3027–29); R. 40 (Order Compelling Disc. at 1) (Page ID #203); R. 42 (Mot. for Sanctions) (Page ID #207). The defendants failed to produce documents collected from the Healthcare Essentials hard drive, serial numbers and locations for the V.A.C.s, and any financial or accounting records. R. 167 (Memorialization of Disc. at 6–8) (Page ID #3027–29). In June 2016, the district court ordered the parties to submit a joint memorialization of all discovery requests and productions. R. 182 (Order at 1) (Page ID #3670). The defendants refused to comply. *Id.* The district court then ordered the parties to submit a joint memorialization again, and the defendants made a submission but refused to sign under penalty of perjury. *Id.* The defendants eventually submitted a supplement to KCI's memorialization of discovery and attached affidavits from both Ryan and Colin attesting that Healthcare Essentials has "fully and truthfully

answered all of KCI USA's discovery requests." R. 172 (Defendants' Supplement at 96–97) (Page ID #3451–52). Yet, they were hiding and refusing to produce documents stowed at Colin's residence and at a storage unit. *See* R. 331 (Show Cause Hr'g Tr. at 133, 186–87) (Page ID #5855, 5908–09).

On July 1, 2016, the district court granted KCI's motion for a preliminary injunction barring the defendants from "[r]epresenting that they are in any way affiliated with KCI" and "[m]arketing, distributing, selling, leasing, servicing, obtaining, or otherwise disseminating any KCI VAC® Therapy System and any other KCI products related to that therapy system." R. 162 (Prelim. Inj. Order at 13) (Page ID #2996). That same month, the district court ordered Healthcare Essentials, Ryan, and Colin to produce personal and company electronic devices to the district court by a certain date. R. 191 (Order at 1–2) (Page ID #3751–52). They failed to do so. R. 197 (Sanctions Order at 1–2) (Page ID #3894–95). As a result, the district court collectively sanctioned them $5,000, jointly and severally. *Id.* When they eventually tried to comply, they handed over devices that had the data erased. R. 269 (Mot. to Show Cause at 1–2) (Page ID #4821–22).

On August 5, 2016, the district court held a status conference to address Healthcare Essentials's ongoing obstruction of discovery. *See* R. 233 (Status Conf. Tr. at 6–7) (Page ID #4197–98). The district court held Ryan in contempt of court and had him taken into custody for the defendants' failure to produce a list of all V.A.C.s in use and their serial numbers as ordered by the court. R. 208 (Contempt Order at 1–2) (Page ID #3999–4000). During the same conference, KCI revealed that the defendants were violating the preliminary injunction order by putting new V.A.C.s into service and refusing to remove V.A.C.s that had been in place at healthcare facilities prior to the order. R. 233 (Status Conf. Tr. at 20–21) (Page ID #4211–12). In response, the district

4

court amended the injunction order to expand its terms and to close up any loopholes. R. 218 (Am. Inj. Order at 1–3) (Page ID #4074–76).

In September 2016, KCI informed the district court that the defendants were still violating the injunction order. R. 382 (Status Conf. Tr. at 6–12) (Page ID #7311–17). In January 2017, KCI moved for the defendants to show cause and requested a discovery hearing regarding the defendants' misconduct during the litigation, including the destruction of evidence, refusal to provide discovery, misrepresentations in discovery, and violations of the injunction orders. R. 269-1 (Mem. in Supp. of KCI's Mot. to Show Cause at 2–13, 15) (Page ID #4826–37, 4839). The district court granted the motion and scheduled a hearing that would ultimately take place on November 9, 2017. R. 304 (Show Cause Hr'g Order at 1) (Page ID #5320). During the course of discovery, KCI had to resort to subpoenaing third-parties to obtain the communications and documents necessary to prove its claims. *See* R. 331 (Show Cause Hr'g Tr. at 66) (Page ID #5788). Based on those documents, KCI amended its complaint in February 2017 to allege that Healthcare Essentials was a racketeering enterprise that was stealing KCI V.A.C.s, stripping them of their bar codes that would identify the devices as belonging to KCI, and then marketing and distributing the devices as belonging to Healthcare Essentials. R. 276 (Third Am. Compl. at 7–11, ¶¶ 23–40) (Page ID #4936–40). In its bench brief filed ahead of the show cause hearing, KCI revealed that the mirror image of a Healthcare Essentials hard drive in the court's custody provided them with incriminating documents that KCI had requested and never received. *See* R. 328 (KCI Bench Br. at 31–34) (Page ID #5681–84); R. 382 (Status Conf. Tr. at 16) (Page ID #7321).

At some point, the FBI began investigating the Tennebars' conduct and arrested them for obstruction of justice. R. 331 (Show Cause Hr'g Tr. at 6–7) (Page ID #5728–29). In April 2017,

KCI discovered that Ryan and Colin were secretly storing Healthcare Essentials records at Colin's personal residence and at a storage unit. *Id.* at 133, 186–87 (Page ID #5855, 5908–09). The Tennebars never disclosed the records in spite of a court order compelling the defendants to produce any such documents to KCI. *Id.* On November 9, 2017, the district court held a show cause hearing in which KCI presented documents from subpoenas and the Healthcare Essentials hard drive. *See id.* at 13–15, 30, 45 (Page ID #5735–37, 5752, 5767). Those documents uncovered the full extent of the racketeering enterprise and the Tennebars' misconduct in discovery.

On June 29, 2018, the district court ordered case-terminating sanctions against the defendants in the form of a default judgment on all counts in the Third Amended Complaint. R. 360 (Order of Default J. at 1–2) (Page ID #6638–39). It did so based on its findings that the defendants failed to disclose (as ordered) numerous communications and documents, produced fabricated evidence, violated the court's injunction orders, filed false affidavits, destroyed evidence, and intimidated witnesses. *Id.* at 4–16 (Page ID #6641–53). On September 10, 2018, the district court awarded KCI $645,016,638.00 in damages, jointly and severally against all defendants. R. 438 (Order of Damages at 1) (Page ID #8026). The district court pierced the corporate veil to reach Colin as the sole shareholder of Healthcare Essentials. *Id.* at 4–5 (Page ID #8029–30). It also found, in the alternative, that the allegations in the Third Amended Complaint were sufficient to find Colin individually liable. *Id.* at 5–6 (Page ID #8030–31). On September 19, 2018, the district court awarded KCI $2,464,313.55 in attorney fees and costs, jointly and severally against all defendants, along with smaller sums against one of the law firms and three of its attorneys that initially represented Healthcare Essentials. R. 439 (Order of Att'y Fees at 1–2)

(Page ID #8042–43). Colin filed his notice of appeal of the default judgment, damages, and attorney fees and costs on December 22, 2018. R. 454 (Notice of Appeal) (Page ID #8486).

## II. JURISDICTION

We have jurisdiction to review Colin Tennebar's timely appeal of the entry of default judgment and damages. *See* 28 U.S.C. § 1291. The district court was required to issue the judgment in a separate document but failed to do so. *See* FED. R. CIV. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document . . . ."). When that happens, we consider the judgment to be entered 150 days from its entry on the docket. FED. R. CIV. P. 58(c)(2)(B); FED. R. APP. P. 4(a)(7)(A)(ii). The appellant then has 30 days from entry of judgment to file a notice of appeal. FED. R. APP. P. 4(a)(1)(A). Here, the district court ordered default judgment on June 29, 2018, R. 360 (Order of Default J. at 28) (Page ID #6665); ordered damages on September 10, 2018, R. 438 (Order of Damages at 16) (Page ID #8041); and entered its final order and terminated the case on September 19, 2018, R. 439 (Order of Att'y Fees at 27–28) (Page ID #8068–69). Colin timely appealed the district court's order of default judgment and damages by filing his notice on December 22, 2018. *See* R. 454 (Notice of Appeal) (Page ID #8486). We accordingly have jurisdiction over his appeal of each.

We lack jurisdiction, however, to review Colin's appeal of the district court's order granting attorney fees. Unlike a judgment, an order granting attorney fees does not require a separate document. *See* FED. R. CIV. P. 58(a)(3) ("[A] separate document is not required for an order disposing of a motion . . . for attorney's fees under Rule 54."). Instead, the order is considered entered on the date of entry on the docket. *See* FED. R. APP. P. 4(a)(7)(A)(i). The 30-day time-clock to file a notice of appeal starts running on that date. *See* FED. R. APP. P. 4(a)(1)(A).

Here, Colin's notice of appeal was due to be filed by October 19, 2018—30 days after the district court issued its order granting attorney fees on September 19, 2018. *See* FED. R. APP. P. 4(a)(1)(A). Because he did not file his notice of appeal until December 22, 2018, we dismiss as untimely his appeal of the attorney fees order. *See* R. 454 (Notice of Appeal) (Page ID #8486).

### III. DEFAULT JUDGMENT

A district court may sanction parties with entry of default judgment for failure to comply with discovery orders. FED. R. CIV. P. 37(b)(2)(A)(vi). We affirm the district court's sanction of default judgment against Colin Tennebar based on the court's factual finding that Colin was individually responsible for misconduct in discovery. We do not, however, endorse the district court's decision to pierce the corporate veil to find Colin liable for the company's discovery misconduct.

For Colin to be liable under a veil-piercing theory, the district court would need to make factual findings that Colin had actual and total control of Healthcare Essentials and used it for fraudulent or criminal purposes. *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 542–43 (Ohio 2008) ("The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.") (quoting *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.*, 617 N.E.2d 1075, 1086 (Ohio 1993)). The district court made no such findings with respect to Colin. But because we hold that the district court's individualized

8

findings were sufficient to sanction Colin, the court's error is inconsequential. We are not persuaded by Colin's argument that the district court's veil-piercing analysis "tainted" its alternative analysis, which is well supported by individualized factual findings detailing Colin's misconduct in discovery. *See infra* pp. 10–11.

We hold at the outset that the Third Amended Complaint offered sufficient grounds for the district court to enter default judgment against Colin on all claims as a matter of law. Although Colin (once subject to sanctions) cannot contest the truth of the allegations, he may argue that the allegations in the Third Amended Complaint do not support a judgment against him on certain claims. *See United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007) ("[U]pon the entry of a default judgment, Conces's liability was deemed to be established as a matter of law and the factual allegations of the complaint were no longer open to dispute."); *Gen. Conf. Corp. of Seventh-day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010) ("A default judgment does not preclude review of whether the allegations in the complaint, if taken as true, 'were sufficient to state a claim and support a judgment of liability.'") (quoting *Conces*, 507 F.3d at 1038–39). Colin argues that KCI's Third Amended Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). He says it is not enough for the complaint to incorporate allegations against the "defendants" as allegations against him. We disagree.

The Third Amended Complaint names Colin as an individual defendant and explains that Colin "is the sole shareholder" of Healthcare Essentials. R. 276 (Third Amended Compl. at 2; 4, ¶ 8) (Page ID #4931, 4933). It alleges that Ryan and Colin together "exerted sole control over

Healthcare Essentials" and operated Healthcare Essentials for unlawful purposes. *Id.* at 11–12, ¶¶ 41–44 (Page ID #4940–41). With that framework, we understand the detailed allegations against the defendants as plausibly implicating Colin, the sole shareholder of the company. Designating Colin as both the sole shareholder and as someone who shares control of the business was not a bare legal conclusion, and contrary to Colin's view, his role as such is relevant for an individualized analysis of his conduct, not just veil piercing. It was not necessary for KCI to list Colin by name in each allegation against the defendants.

Colin does not dispute that the allegations in the Third Amended Complaint (if incorporated against him) are sufficient to create liability under the Ohio Deceptive Trade Practices Act, RICO, and the Ohio Corrupt Activities Act, or for conversion, unfair competition, tortious interference with current and prospective business relationships, and civil theft. *See id.* at 12–22, ¶¶ 45–113 (Page ID #4941–51). Because the allegations in the Third Amended Complaint plausibly state a claim on all counts, the entry of default judgment was proper as a matter of law.

The remaining issue is whether default judgment was an *appropriate* sanction for Colin. We review the district court's sanction order and entry of default judgment for abuse of discretion. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). Courts consider four factors in this analysis:

1) whether the disobedient party acted in willful bad faith;
2) whether the opposing party suffered prejudice;
3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and
4) whether less drastic sanctions were imposed or considered.

*Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). Bad faith is generally the most important factor. *Ndabishuriye v. Albert Schweitzer Society, USA, Inc.*, 136 F. App'x 795, 800 (6th Cir. 2005).

*First*, there is overwhelming evidence that Colin acted in willful bad faith. He failed to turn over personal and work electronic devices as ordered. R. 360 (Order of Default J. at 13, 21) (Page ID #6650, 6658); R. 197 (Sanctions Order at 1–2) (Page ID #3894–95). He failed to disclose documents that would have established that Healthcare Essentials was doing business from 2008–2011, contrary to the defendants' representations; that Colin and Ryan attempted to sell the V.A.C. business to KCI in 2013; and that the Healthcare Essentials business summary stated that Colin and Ryan own and operate the business together. R. 360 (Order of Default J. at 6–9) (Page ID #6643–46); R. 331 (Show Cause Hr'g Tr. at 27–32, 76–83, 126) (Page ID #5749–5754, 5798–5805, 5848). He failed to produce or disclose Healthcare Essentials records he was storing at his residence and at a storage space, even when he was ordered to produce them. R. 360 (Order of Default J. at 10, 22–23) (Page ID #6647, 6659–60); R. 331 (Show Cause Hr'g Tr. at 186) (Page ID #5908). He failed to produce or disclose KCI V.A.C.s and supplies that he had secreted away at an undisclosed location. R. 360 (Order of Default J. at 21) (Page ID #6658); R. 331 (Show Cause Hr'g Tr. at 186) (Page ID #5908). He executed a false affidavit attesting that he had "fully and truthfully answered all of KCI USA's discovery requests." R. 360 (Order of Default J. at 12, 23) (Page ID #6649, 6660) (quoting R. 172 (Defendants' Supplement at 97) (Page ID #3452)). Colin offers no serious argument that he was incapable of complying. The district court fairly assessed him as acting in willful bad faith.

*Second*, the district court's findings show that KCI was prejudiced by Colin's discovery abuses. KCI was "deprived of its right to discoverable evidence which it could have used to properly litigate this case before the Court." R. 360 (Order of Default J. at 26) (Page ID #6663). Specifically, the defendants "deprived KCI of, at the least, evidence demonstrating to whom KCI VACs were leased and when, Defendants' financial data, Defendants' email correspondence, the number of KCI VACs acquired by Defendants, Defendants' telephone records, and serial numbers on VACs that were utilized and distributed by Defendants." *Id.* at 25 (Page ID #6662). The district court came to its conclusion based in part on Colin's individual obstructions and frauds—all of which deprived KCI of the information it was entitled to receive and caused this case to linger long past its due end. *See supra* pp. 10–11. "[I]t is in cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be the appropriate sanction." *Mack*, 270 F. App'x at 378. The district court properly found that Colin's personal failure to comply with discovery mandates prejudiced KCI.

*Third*, Colin was on notice that he could be sanctioned with a default judgment. He had already been sanctioned with a $5,000 fine for failing to produce personal and work devices to the court by its deadline. R. 197 (Sanctions Order at 1–2) (Page ID #3894–95). In that order for sanctions, the district court announced that "[t]he parties remain on notice that continued noncompliance will not be tolerated" and specified that "[f]inancial penalties, litigative disadvantage, and incarceration remain among the penalties likely to greet this unacceptable conduct." *Id.* at 2 (Page ID #3895). Earlier that month, the district court warned in its order scheduling a hearing on KCI's motion to show cause that "Colin Tennebar[] and Ryan H. Tennebar are hereby on notice that, should the Court find by clear and convincing evidence any violation of

court orders . . . the Court will impose any sanction it considers appropriate, including . . . entering default judgment against Defendants and in Plaintiff's favor on Plaintiff's claims." R. 182 (Order at 5) (Page ID #3674). Notice is satisfied.

*Fourth*, the district court imposed alternative sanctions on Colin when it assessed him the $5,000 fine, and this did not deter his conduct. *See* R. 197 (Monetary Sanctions Order at 1–2) (Page ID #3894–95). "[A]fter at least two warnings that continued noncompliance would lead to sanctions," the district court issued monetary sanctions on Colin and the other defendants jointly and severally for $5,000 for their failure to produce their personal and work electronic devices by the court's deadline. *Id.* Even after being slapped with the fine, Colin persisted in his misconduct by, for instance, continuing to store KCI V.A.C.s and KCI supplies at his residence and at a storage space. R. 360 (Default J. Sanctions Order at 22–23) (Page ID #6659–60). Monetary sanctions evidently were not enough. With all four factors weighing in favor of default judgment as an appropriate sanction, the district court did not abuse its discretion in imposing a default judgment as a sanction against Colin in this case.

Notably, the sanctions inquiry does not ask whether another party was more culpable. The district court had no obligation to consider relative culpability of Colin compared to his brother in deciding whether to impose sanctions, and neither do we. Our task instead is to evaluate whether Colin's misconduct, standing alone, merits the severity of the sanction imposed. Colin committed repeated discovery abuses, including hiding evidence and defrauding the court, after multiple warnings that continued disregard for court orders would result in severe consequences. *See, e.g.*, R. 195 (6/30/2016 Prelim. Inj. Hr'g Tr. at 99) ("Mr. Colin Tennebar, you will sign this document under penalty of perjury. And I will take swift action if any attestation, statement made, you write

and sign is not true."); R. 197 (Monetary Sanctions Order at 1–2) (ordering sanctions "[a]fter at least two warnings that continued noncompliance would lead to sanctions").

If the concern, instead, is with the amount of damages, the district court gave Colin the opportunity to distinguish his conduct from his brother's, but he did not take it. R. 438 (Order of Damages at 8–9) (Page ID #8033–34). The district court instructed Colin that he could negotiate and propose his own stipulation of damages, and he never did. *Id.* at 9 (Page ID #8034). "Colin Tennebar's only argument on the topic was that he should not be assessed damages at all because Plaintiff's Third Amended Complaint failed to state a claim for relief against him." *Id.* at 9 n.2 (Page ID #8034 n.2). "At no point, either in briefing or at the damages hearing, did Colin Tennebar dispute KCI's damages estimates." *Id.* at 9 (Page ID #8034). "Having failed to submit evidence challenging [KCI's] . . . submissions with regard to damages, [Colin] cannot now seek review of the court's reliance on [KCI's] figures." *See Bank One*, 916 F.2d at 1081. The district court did not abuse its discretion by assessing Colin the same amount of damages as the other defendants.

Finally, entering a default judgment did not, as Colin contends, violate his Seventh Amendment right to a jury trial. The Federal Rules of Civil Procedure permit courts to enter default judgment as a sanction for disobeying discovery orders. FED. R. CIV. P. 37(b)(2)(A)(vi). The Supreme Court has not indicated that a default judgment implicates the right to a jury trial. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2283 (3d ed. 2019). Although our circuit has not addressed this precise question, we have held that dismissal as a sanction does not violate the right to a jury trial. *Russell v. Clark*, 178 F.3d 1296, at *2 (6th Cir. 1999) (table); *see also Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("Rule 37 authorizes the sanction of dismissal, and a punitive dismissal is equivalent to

an adjudication on the merits. That the court here chose to hold hearings to decide upon sanctions, in effect determining the merits of the case, did not violate PFEL's jury trial right." (citation omitted)). The Fourth Circuit, however, has addressed this question and has acknowledged that a default judgment "represents in effect an infringement upon a party's right to trial by jury." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977) (quotation omitted). But the Fourth Circuit concluded that "the sanction of a default judgment [is] a rational method of enforcement of the discovery rules, in an appropriate case," and simply stated that the existence of the right to a jury trial suggests that "the exercise of the power should be confined to the flagrant case." *Id.* (quotations omitted); *see also Wyle*, 709 F.2d at 592. That concern is already embodied in our case law. Courts in our circuit may exercise the power to enter a default judgment only in the rare case of willful bad faith, and often only in combination with prejudice to the other party, notice to the defendant, and consideration of alternative sanctions. *See id.*; *Mack*, 270 F. App'x at 376. This is such a case. *See supra* pp. 10–13. The district court did not violate Colin's Seventh Amendment right to a jury trial.

## IV. CONCLUSION

We **AFFIRM** the district court's imposition of case-terminating sanctions in the form of a default judgment and its order granting damages. We **DISMISS** as untimely Colin's appeal of the district court's order granting attorney fees.